**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MED-X GLOBAL, LLC, as assignee of MARIO BECERRIL TREJO, | CIVIL ACTION NO: |
| *Plaintiff*, | |
| vs. | **COMPLAINT and  JURY DEMAND** |
| AZIMUTH RISK SOLUTIONS, LLC, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 92355005 | |
| *Defendants*. | |

Plaintiff, MED-X GLOBAL, LLC as assignee of MARIO BECERRIL TREJO ("Med-X"), by and through undersigned counsel, sues Defendants, AZIMUTH RISK SOLUTIONS, LLC ("Azimuth") and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 92355005 ("Lloyd's"), as follows:

1.  This is an action by Med-X, as assignee of MARIO BECERRIL TREJO ("Trejo"), arising out of Lloyd's and / or Azimuth's breaches of the health insurance contract in place between Trejo and Lloyd's.

2.  Azimuth serves as Lloyd's third party administrator in relation to the subject health insurance contract.

3.  At all material times, Trejo was a citizen and resident of Mexico.

4.  Med-X is a medical billing agent that primarily serves foreign medical providers by providing medical billing and payment services.  Med-X is incorporated in the State of New Jersey, maintains its principal place of business in New Jersey, and is in all

respects *sui juris*.   More specifically, Med-X is situated in Morganville, NJ, Monmouth County.

5.  Upon information and belief, at all material times, Lloyd's was an insurance exchange based in London, with offices in New York, New York, and engaged in the business of, among other things, selling insurance and indemnifying (or not, as here) claimants throughout the world.

6.  Upon information and belief, at all material times, Azimuth was a third party insurance administrator based in Indiana and engaged in the business of, among other things, administering health insurance claims and making indemnification decisions in relation to same throughout the world.

7.  This Court possesses original jurisdiction pursuant to Title 28, United States Code, Section 1332(a) as the parties are diverse and the amount in controversy exceeds $75,000.00.

8.  Venue is proper in the United States District Court for the District of New Jersey pursuant to Title 28, United States Code, Section 1391(b), since, for example, (a) the causes of action accrued in New Jersey, (b) the damages were experienced in New Jersey, (c) Lloyd's and Azimuth conduct business in New Jersey, and (d) Med-X is located New Jersey.

9.  All conditions precedent to the institution of this action (*e.g.*, appeals) have occurred, been performed, been waived, been excused, been rendered impracticable / impossible, were futile, and / or were not mandatory.

## FACTS COMMON TO ALL COUNTS

10. Trejo purchased a health insurance policy (Policy No. 92355005, the "Policy") underwritten by Lloyd's and serviced by Azimuth with March 21, 2016, as the Policy's effective date.[1]

11. The Policy is a contract between Lloyd's and Trejo whereby Lloyd's (through Azimuth), in exchange from Trejo's valuable premium payment, agrees to provide coverage for medical services and supplies provided to Trejo by medical providers which the policy refers to as "Eligible Medical Expenses".

12. "Eligible Medical Expenses" is defined in paragraph 26 of the Policy documents. *See* Ex. A.

13. Paragraph 26 of the Policy documents states, in pertinent part, as follows:

exclusions set forth in #27, below, the Scheme Administrator will reimburse the Participating Member for the following costs, charges and expenses incurred by the Participating Member with respect to an Illness or Injury suffered or sustained by the Participating Member while the Evidence of Insurance issued by the Master Policy is in effect, so long as the costs, charges or expenses are Usual, Reasonable and Customary

14. One such "Eligible Medical Expense" is charges incurred at a hospital.  More specifically, the Policy provides, in pertinent part, as follows:

---

[1] A copy of the Policy documents possessed by Plaintiff is attached hereto as **Exhibit A**, but Defendants have not provided the Master Policy despite Plaintiff's repeated requests for same several months ago.  Plaintiff reserves the right to amend the Complaint when the Master Policy is provided.

a. Charges incurred at a Hospital for:

    i. Daily room and board and nursing services not to exceed the average semi-private room rate; and

    ii. Daily room and board and nursing services in Intensive Care Unit; and

    iii. Use of operating, Treatment or recovery room; and

    iv. Services and supplies which are routinely provided by the Hospital to persons for use while Inpatient; and Emergency Treatment of an Injury, even if Hospital confinement is not required; and

    v. Emergency Treatment of an Illness; however an additional $250 deductible will be required, unless the Participating Member is directly admitted to the Hospital as Inpatient for further Treatment of that Illness.

Ex. A at ¶ 26.

15. The Policy defines a hospital as follows:

**Hospital:** An institution which operates as a hospital pursuant to law;  is licensed by the state or country in which it operates; operates primarily for the reception, care, and treatment of sick or injured persons as Inpatients;  provides twenty-four (24)-hour nursing service by Registered Nurses on duty or call; has a staff of one or more Physicians available at all times; provides organized facilities and equipment for diagnosis and treatment of acute medical, surgical or mental/nervous conditions on its premises; and is not primarily a long-term care facility, Extended Care Facility, nursing, rest, Custodial Care, or convalescent home, a place for the aged, drug addicts, alcoholics or runaways; or similar establishment.

Ex. A at ¶ 34.

16. The Policy defines "medically necessary" as follows:

**Medically Necessary; Medical Necessity:** A Treatment or supply which is necessary and appropriate for the diagnosis or Treatment of an Illness or Injury based on generally accepted standards of current medical practice as determined by the Scheme Administrator. By way of example but not limitation, a Treatment or supply will not be considered Medically Necessary or a Medical Necessity if it is provided or obtained only as a convenience to the Participating Member or his/her provider; and/or if it is not necessary or appropriate for the Participating Member's Treatment, diagnosis or symptoms; and/or if it exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate, and appropriate diagnosis or Treatment.

Ex. A at ¶ 34.

17. The Policy defines Usual, Reasonable and Customary as follows:

**Usual, Reasonable and Customary:** The most common charge for similar services, medicines, or supplies within the area in which the charge is incurred, so long as those charges are reasonable. The Scheme Administrator reserves the right to determine, in the reasonable exercise of its discretion, whether charges are Usual, Reasonable and Customary. In determining whether a charge is Usual, Reasonable and Customary, the Scheme Administrator may consider one or more of the following factors, without limitation: the level of skill, extent of training, and experience required to perform the procedure or service; the length of time required to perform the procedure or service as compared to the length of time required to perform other similar services; the severity or nature of the Illness or Injury being treated; the amount charged for the same or comparable services, medicines or supplies in the locality; the amount charged for the same or comparable services, medicines or supplies in other parts of the country; the cost to the provider of providing the service, medicine or supply; and such other factors as the Scheme Administrator, in the reasonable exercise of its discretion, determines are appropriate.

Ex. A at ¶ 34.

18. At all material times, premiums were paid by Trejo for his (and his dependents') insurance coverage under the Policy and the Policy was in full force and effect.

19. At all material times, Trejo complied with Policy conditions.

20. On or about July 2, 2016, Trejo suffered severe injuries as a result of a gunshot wound that required his hospitalization from the date of the injury until on or about August 22, 2016.

21. During his hospital stay, Trejo required extensive medical care in order to save his life and re-gain his health.

22. At some point during his medical treatment, Trejo authorized the medical center, St. Luke's Medical Center to bill Lloyd's through Azimuth.

23. The total amount of the medical expenses incurred were $917,116.32.

24. The medical center billed Lloyd's through Azimuth for the medical expenses under the terms of the Policy.

25. On March 14, 2017, Lloyd's through Azimuth denied all but $62,500.00 of the medical expenses incurred stating:

> The remaining part of the amount claimed (**USD$854,616.32**) is *excluded* for the following reasons (capitalized words are those defined in the policy):
> - the length of Mr. Trejo-Becerril's in-patient stay was not Medically Necessary, as defined;
> - the billed items are not Usual, Reasonable and Customary Charges, as defined, in Mexico and the United States; and,
> - taxes are not a covered expenses.

26. To date, Lloyd's through Azimuth has unreasonably withheld from Med-X benefits totaling approximately $854,616.32 for medical services provided to Trejo.

27. After Defendants' improper denial of the claim, the medical center sought help from Med-X for collection of the outstanding insurance benefits.

28. On April 27, 2017, the medical center executed an assignment of benefits for the Trejo claim to Med-X.

29. On May 4, 2017, a representative of Med-X wrote to a representative of Azimuth as third party administrator for Lloyd's and requested a detailed explanation of the denial of the claim:

> **From:** Helen Volosov
> **Sent:** Thursday, May 04, 2017 3:00 PM
> **To:** 'val@azimuthrisk.com' <val@azimuthrisk.com>
> **Subject:** Mario Trejo Saint Luke's Hospital
> Dear Val,
> As per our conversation please get back to me next week regarding detailed EOB.
> Thank you,
> **Helen V.**
> **International Claims Specialist**
> **Med-X Global**
> **(o) 732 640-2227 ext: 219**
> **(f) 732 640-2230**
> **Med-X Global Services**
> P.O. Box 220
> Morganville, NJ 07751-0220

30. There was no response to that email, so, on May 12, 2017, the Med-X representative followed up:

> **From:** Helen Volosov [mailto:helen@medxmedical.com]
> **Sent:** Friday, May 12, 2017 11:03 AM
> **To:** Valerie Robinson
> **Subject:** FW: Mario Trejo Saint Luke's Hospital
> Dear Val,
> I am inquiring about Mario's Trejo case. Do you have any updates regarding the detailed denial?
> Thank you,
> **Helen V.**
> **International Claims Specialist**
> **Med-X Global**
> **(o) 732 640-2227 ext: 219**
> **(f) 732 640-2230**
> **Med-X Global Services**
> P.O. Box 220
> Morganville, NJ 07751-0220

31. Finally, on May 17, 2017, Azimuth responded and indicted that a detailed explanation of the denial would be forthcoming:

**From:** Valerie Robinson [mailto:val@azimuthrisk.com]
**Sent:** Wednesday, May 17, 2017 3:45 PM
**To:** Helen Volosov <helen@medxmedical.com>
**Subject:** RE: Mario Trejo Saint Luke's Hospital
Hello Helen,
I apologize for the delay as I have been waiting on Lloyds response to your
request. I have been informed that Lloyds has engaged the services of another
Mexican medical provider to assess the reasonableness of the bill submitted by St
Luke's and are currently awaiting their final report. I hope to have this report
sometime next week. As soon as I receive the URC/medical necessity report I will
be in contact with you.
Again, I apologize for the delay and will be in touch soon.
Kind Regards,
Valerie Robinson
Azimuth Risk Solutions

32. Despite those promises, no detailed explanation of the denial was ever provided to

Med-X.  So, on June 20, 2017, counsel for Med-X wrote to the representative of

Azimuth asking for a copy of the Master Policy along with requests for other

documentation concerning the claim:

From: Jeffrey Greyber <jgreyber@merlinlawgroup.com>
Date: 6/20/17 2:27 PM (GMT-05:00)
To: Valerie Robinson <val@azimuthrisk.com>
Cc: Nicole Vinson <nvinson@merlinlawgroup.com>, Tammara Vam
<tvam@merlinlawgroup.com>, Heather Casebolt
<HCasebolt@merlinlawgroup.com>
Subject: Mario Trejo / Saint Luke's Hospital, Case No. 1050057, Master Policy
No. A92355005: request for UCR report and administrative record

Dear Ms. Robinson,
Please be advised that Merlin Law Group has been retained by Med-X Global to
handle this matter moving forward; *i.e.*, to assess the (im)propriety of
approximately $855,000.00 in claim denials relating to medical *services* received
by Mr. Mario Trejo at Saint Lukes Hospital in July and August 2016. Attached
please find the authorization / assignment documentation between my client and
the medical provider and patient. Key to our assessment is precisely what you
promised to Helen Volosov of Med-X Global a month ago – the carrier's *ex post
facto* UCR-related report. Moving forward, please direct any and all
communications concerning this matter to me (and / or my colleague, Nicole
Vinson, Esq., CCed to this email). When can we expect to receive the *ex post
facto* UCR report that Lloyd's is working on with a Mexican medical provider?
In addition to that UCR report, please promptly provide a copy of the entire
administrative record. The administrative record should consist, at minimum, of
the following: **(1)** Complete, certified copies of all plan documents (master policy,

application, and any riders) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; **(2)** Copies of all correspondence and / or documents exchanged between Lloyd's and any of Mr. Trejo's medical providers regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(3)** Copies of all correspondence and / or documents exchanged between Azimuth and any of Mr. Trejo's medical providers regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(4)** Copies of all correspondence and / or documents exchanged between Lutea (Anguilla) and any of Mr. Trejo's medical providers regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(5)** Copies of all Mr. Trejo medical records in the possession of Lloyd's, Azimuth, and / or Lutea (Anguilla); **(6)** Copies of all correspondence and / or documents exchanged between Lloyd's and Mr. Trejo and / or any Mr. Trejo representatives regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(7)** Copies of all correspondence and / or documents exchanged between Azimuth and Mr. Trejo and / or any Mr. Trejo representatives regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(8)** Copies of all correspondence and / or documents exchanged between Lutea (Anguilla) and Mr. Trejo and / or any Mr. Trejo representatives regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(9)** Copies of all correspondence and / or documents exchanged between Lloyd's and Saint Lukes and / or Med-X Global regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(10)** Copies of all correspondence and / or documents exchanged between Azimuth and Saint Lukes and / or Med-X Global regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(11)** Copies of all correspondence and / or documents exchanged between Lutea (Anguilla) and Saint Lukes and / or Med-X Global regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(12)** Copies of all correspondence and / or documents exchanged between Lloyd's and any other party (less any attorney-client privileged data, of course) regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(13)** Copies of all correspondence and / or documents exchanged between Azimuth and any other party (less any attorney-client privileged data, of course) regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(14)** Copies of all correspondence and / or documents exchanged between Lutea (Anguilla) and any other party (less any attorney-client privileged data, of course) regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(15)** Identification of all policy / plan language upon which the claims decision-making was based; **(16)** Contact information for any medical professionals enlisted by Lloyd's, Azimuth, and / or Lutea (Anguilla regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(17)** Transcripts and audio recordings of any recorded statements or phone calls between Lloyd's, Azimuth, and / or Lutea

(Anguilla) and Mr. Trejo, Saints Lukes, and / or Med-X Global; **(18)** Transcripts and audio recordings of any recorded statements or phone calls between Lloyd's, Azimuth, and / or Lutea (Anguilla) and any other party (less any attorney-client privileged data, of course) regarding Mr. Trejo, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(19)** All EOBs relating to any claims that were made relating to the subject medical services; **(20)** All Saint Lukes and / or Med-X Global billing paperwork received by Lloyd's, Azimuth, and / or Lutea (Anguilla) relating to Mr. Trejo; **(21)** All evidence of any payment(s) made by Lloyd's, Azimuth, and / or Lutea (Anguilla) relating to any claims that were made relating to the subject medical services; **(22)** All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which Lloyd's, Azimuth, and / or Lutea (Anguilla) partially or wholly based its claims decisions; and **(23)** Copies of any other documents that Lloyd's, Azimuth, and / or Lutea (Anguilla) partially or wholly relied upon in deciding any claims relating to the subject medical services. Equipped with this documentation / information, we will be in a better position to carry out what seems to be the next step – submission of an appeal package within 90 days of your supplying us with the above documentation / information. Thank you in advance for the anticipated prompt response and cooperation. We look forward to working with you towards rectifying the subject denials.
Thank you,
Jeffrey L. Greyber, Esq.

33. The Azimuth representative responded, indicating that the requested information would be forthcoming:

On Jun 22, 2017, at 7:17 PM, Valerie Robinson <val@azimuthrisk.com> wrote:

Hello Mr. Grayber,

Thank you for your email. I will gather and forward the information requested below next week.

Please let me know if you have any questions and I will be in touch soon.

Kind Regards,

Valerie Robinson
Azimuth Risk Solutions
1 North Pennsylvania Street, Ste 200
Indianapolis, IN 46204
Phone: 317-644-6291/888-201-8850
Fax 317-423-9620/888-201-8851
Lloyd's, London Coverholder

34. The promised information was not provided, so, on July 12, 2017, counsel for Med-X followed up for the requested information:

| | |
|---|---|
| **From:** | Jeffrey Greyber |
| **Sent:** | Wednesday, July 12, 2017 1:25 PM |
| **To:** | Valerie Robinson |
| **Cc:** | Carlos Robinson; Chantel Padgett; Nicole Vinson; Tammara Varn; Heather Casebolt |
| **Subject:** | Re: Mario Trejo / Saint Luke's Hospital, Case No. 1050057, Master Policy No. A92355005:  request for UCR report and administrative record |

Ms. Robinson,
Please promptly advise.

Thank you,
Jeff

Sent from my iPhone

35. No response to that email was ever sent nor were the requested documents. Thereafter, Med-X's counsel continued to follow up with Azimuth, but Azimuth also did not respond to that follow up correspondence.

## COUNT I – BREACH OF CONTRACT

36. Med-X re-alleges paragraphs 1 through 35 as if fully set forth herein.

37. At all material times to this action and in exchange for a valuable premium, Lloyd's through Azimuth provided health insurance to Trejo under the Policy, which is a binding and enforceable insurance contract.

38. The subject medical conditions and related necessary services of Trejo are covered under the Policy, and Lloyd's through Azimuth erred in not fully indemnifying Trejo in relation to same.

39. By the terms of the Policy and pursuant to all applicable law, Lloyd's through Azimuth, among other things, had a duty to properly investigate the subject medical conditions and related necessary services, adjust / investigate the Claim, and fully indemnify *via* Med-X as valid assignee.

40. Defendants failed Med-X in these regards (most notably, failure to pay the benefits due and owing under the Policy), which breached the Policy and violated applicable law.

41. As a direct, foreseeable, and proximate result of Defendants' breaches of their obligations under the Policy, Med-X has suffered and continues to suffer damages.

42. Med-X has no other adequate remedy at law to address the injuries suffered as a result of Defendants' denial of benefits.

43. As a result of Defendants' breach of the insurance contract, Med-X retained undersigned counsel for representation in this action and agreed to pay counsel a reasonable fee for services rendered.

WHEREFORE, Plaintiff, Med-X Global, LLC, respectfully requests entry of a judgment against Defendants, AZIMUTH RISK SOLUTIONS, LLC, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 92355005, on Count One for:

   (a)   Compensatory damages;

   (b)   Consequential damages;

   (c)   Pre-judgment interest and post-judgment interest;

   (d)   Costs of suit;

   (e)   Attorneys' fees; and

   (f)   For such other relief as the court may deem equitable and just.

## COUNT II – BREACH OF CONTRACT

44. Med-X re-alleges paragraphs 1 through 43 as if fully set forth herein.

45. At all material times to this action and in exchange for a valuable premium, Lloyd's through Azimuth provided health insurance to Trejo under the Policy, which is a binding and enforceable insurance contract.

46. The policy provides that the Master Policy will be provided upon request:

> This insurance is provided under the Master Policy and is in accordance with the Terms and Conditions of the Master Policy. The Master Policy is available upon request at any time by contacting the Scheme Administrator at service@azimuthrisk.com or by calling us at (317)644-6291 (we accept collect calls) or (888)201-8850.

47. As referenced in several of the above averments, none of the germane documentation repeatedly requested by Med-X and counsel, including the Master Policy, was ever provided to Med-X or Med-X's counsel.

48. The failure to provide the Master Policy and other documents requested amounts to a breach of the contract in place between the parties.

49. As a direct, foreseeable, and proximate result of Defendants' breaches of their obligations under the Policy, Med-X has suffered and continues to suffer damages.

50. Med-X has no other adequate remedy at law to address the injuries suffered as a result of Defendant's denial of benefits.

51. As a result of Defendants' breach of the insurance contract, Plaintiff retained undersigned counsel for representation in this action and agreed to pay counsel a reasonable fee for services rendered.

WHEREFORE, Plaintiff, Med-X Global, LLC, respectfully requests entry of a judgment against Defendants, AZIMUTH RISK SOLUTIONS, LLC, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 92355005, on Count One for:

    (a)    Compensatory damages;

(b)    Consequential damages;

(c)    Pre-judgment interest and post-judgment interest;

(d)    Costs of suit;

(e)    Attorneys' fees; and

(f)    For such other relief as the court may deem equitable and just.

## JURY DEMAND

52. Plaintiff, Med-X Global, LLC, hereby demands a trial by jury on all issues so triable

as a matter of right.

Dated:  December 14, 2017

**MERLIN LAW GROUP, PA**
125 Half Mile Road, Suite 200
Red Bank, New Jersey 07701
732-933-2700; 732-933-2702 (Fax)

**/s/ Robert T. Trautmann**
Robert T. Trautmann, Esq.
NJ Bar ID No.: 03756200
rtrautmann@merlinlawgroup.com
*Attorneys for Plaintiff*

EXHIBIT A



Coverage Anywhere. Value Everywhere.

March 21, 2016

Dear Mario Becerril Trejo:

Congratulations! You have selected the Meridian Series Major Medical Insurance Plan from Azimuth Risk Solutions, LLC (Azimuth). You can be confident that you have made an exceptionally good choice by doing so. Azimuth has developed and created what you will find to be the very best value combination of rich benefits, astoundingly good service, and a financially secure Lloyd's, London cover, all at a remarkably fair premium cost. Live your life knowing that solid protection is yours, anywhere the world may take you.

You can login with below Client Login ID and Password from this link: https://www.azimuthrisk.com/client_login.php

Client Login ID:62c62747
Password:12488ea9

This fulfillment of your insurance order contains the following:

- Declaration Page - describes the provisions of your policy
- Identification card - keep with you at all times
- Evidence of Insurance - Specimen Master Policy
- Claim form - should you need to submit a claim for reimbursement, you will need to save your original receipts and submit them to us along with this completed form
- Receipt for the transaction - this is a copy of payment for your records
- Application/Riders - this is a copy of your application and riders for your records

Should you lose or misplace any of these documents, they will remain available to you at any time via our website, www.azimuthrisk.com. You will receive a separate email giving you access to this information and more shortly.

Safe travels,

Carlos M. Robinson
President
Azimuth Risk Solutions, LLC

RISK **SOLUTIONS**

# PLEASE SEE YOUR IDENTIFICATION

# CARD(S) ATTACHED BELOW:



This Declaration Page is attached to and forms part of the Evidence of Insurance provisions:
SLC-3 (USA) NMA2868 (24/08/00) UMR (B0618UB15A109A)

Previous No. **NONE**                       Identification No. **ARS-03-0025429**

**I.    Name and address**
       **Of the Master Policyholder:**

The Beacon/Axis Series Group Insurance Trust
C/O Lutea (Anguilla) Limited P.O. Box 1533, The Valley,
TV1 13P
British West Indies

       **Name of Members:**

**Trejo Mario Becerril
Cuevas Anel Perez
Trejo Mario Axel
Perez Alicia Cuevas**

       **Primary Residence Address of Members:**

Calle Ignacio Zaragoza S-N Colinia Centro
San Jose Del Cabo      Mexico   23400

       **Mail Forwarding Address of Members:**

Calle Ignacio Zaragoza S-N Colinia Centro
San Jose Del Cabo      Mexico   23400

**II.   Effective date from:**

**March 21, 2016** to **March 20, 2017**
(Both days are at 11:59 a.m. eastern standard time)

**III.  Insurance is effective with certain**

UNDERWRITERS AT LLOYD'S, LONDON

       **Percentage**

100%

**IV.   Amount:**

As set forth in Section 24, Schedule of Benefits and
Limits

       **Coverage:**

**MERIDIAN BASIC**

       **Deductible:**

$ 250.00

       **Premium:**

$ 3,380.40

       **Conditional Rate Increase:**

Mario by 20%

       **Rate:**

$ 3,380.40

       **Due Dates/Amounts:**

March 21, 2016 / $ 3,415.40

**V.    Special conditions/Forms Attached:**

SLC-3 (USA) NMA2868 (24/08/00); DECLARATION PAGE; FORM MSE-01 (PAGES 1-32); EXHIBIT A - APPLICATION;
RIDERS- 0

**VI.   Service of Suit may be made upon:**

Drinker, Biddle & Reath LLP
1177 Avenue of Americas, Floor 41
New York, New York, 10036-2714

       **Dated:**

**AZIMUTH RISK SOLUTIONS, LLC.**

       **03/21/2016**

BY: _Carlos M. Robinson_

Correspondent



## EVIDENCE OF INSURANCE
## THE MERIDIAN SERIES BASIC
### UMR (B0618UB15A109A)

This Evidence of Insurance is issued by the Master Policy on behalf of the Master Policyholder, as so authorized by Certain Underwriting Members at Lloyd's who have hereunto subscribed their Names ("The Underwriters") to this Evidence of Insurance and the Master Policy; the **Beacon/Axis Series Group Insurance Trust (Anguilla).** As such, certain Underwriters at Lloyd's authorize Azimuth Risk Solutions, LLC. as the ("Scheme Administrator") of the Master Policy and all Evidence(s) of Insurance issued by the Master Policy.

**THIS DOCUMENT (EVIDENCE OF INSURANCE) IS ISSUED AS NOTICE OF INSURANCE FOR INFORMATION ONLY. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A LEGAL CONTRACT OF INSURANCE. THE CONTRACT IS THE MASTER POLICY (HELD BY THE MASTER POLICYHOLDER), THE APPLICATION, AND ANY APPLICABLE RIDER(S). THIS EVIDENCE OF INSURANCE IS FURNISHED IN ACCORDANCE WITH, AND IN ALL RESPECTS IS SUBJECT TO, THE TERMS AND CONDITIONS OF THE MASTER POLICY. THIS EVIDENCE OF INSURANCE REPLACES ANY OTHER EVIDENCE OF INSURANCE PREVIOUSLY ISSUED COVERING THE INSURANCE DESCRIBED HEREIN. PLEASE REFER TO YOUR APPLICATION FOR DETAILS ON THE SELECTED COVERAGE AMOUNTS AND DEDUCTIBLES.**

This insurance is provided under the Master Policy and is in accordance with the Terms and Conditions of the Master Policy. The Master Policy is available upon request at any time by contacting the Scheme Administrator at service@azimuthrisk.com or by calling us at (317)644-6291 (we accept collect calls) or (888)201-8850.

1. Master Policy Number: **A92355005**
2. Name of Master Policyholder: **Beacon/Axis Series Group Insurance Trust (Anguilla).**
3. Participating Member: All participants enrolled in the **Beacon/Axis Series Group Insurance Trust (Anguilla)**; under the **Meridian Series Plan**.
4. Scheme Administrator: Azimuth Risk Solutions, LLC., 1 N. North Pennsylvania St. Ste 200, Indianapolis, Indiana 46204, United States of America.
5. Coverage Period: The coverage period will be that in which is shown on the Declaration Page issued at the time of approval.
6. Cancellation of Coverage:  The Participating Member shall have seven (7) days from the Initial Effective Date of Coverage (the "Review Period") to review the benefits, conditions, limitations, exclusions and all other Terms of the Master Policy as evidenced and outlined by the Evidence of Insurance issued by the Master Policy. If not completely satisfied, the Participating Member may request cancellation of the Evidence of Insurance retroactive to the Initial Effective Date of Coverage by sending a written request to the Scheme Administrator by mail or fax and received by the Scheme Administrator within the Review Period, thereby qualifying to receive a full refund of Premium paid. Upon receipt of such cancellation and refund, neither the Scheme Administrator nor the Participating Member shall have any further rights, liabilities or obligations under this insurance. After the Review Period, the Participating Member may request cancellation of the Evidence of Insurance as issued by the Master Policy by submitting such request in writing to the Scheme Administrator not less than sixty (60) days in advance of the requested effective date. Cancellation of the Evidence of Insurance is at the sole option of the Scheme Administrator, except when such cancellation is within (the "Review Period"). The Scheme Administrator may request and/or require the Participating Member to execute a release of claims as a condition to and/or in consideration of granting such cancellation. If the Scheme Administrator grants cancellation, coverage for the

Participating Member under this insurance shall terminate with effect from the cancellation date specified by the Scheme Administrator.

The Scheme Administrator shall calculate the amount of Premium earned upon the Declaration and Evidence of Insurance issued by the Master Policy through the requested date of cancellation (Short Rate Earned Premium) in accordance with the Short Rate Cancellation Table in effect as of the date of the request for cancellation. If the Participating Member has paid more than the Short Rate Earned Premium, the Scheme Administrator shall refund the difference between the amount actually paid and the Short Rate Earned Premium. If the Participating Member has paid less than the Short Rate Earned Premium, the Participating Member shall remit to the Scheme Administrator the difference between the Short Rate Earned Premium and the amount actually paid as a condition to cancellation as of such requested date, or the cancellation date will be established retroactive to the date through which and for which Premiums have actually been paid. The Scheme Administrator shall charge the Participating Members credit card on file for any additional premiums due it at cancellation and/ or request payment by check, money order, or wire transfer as a condition of cancellation. A $25.00 cancellation fee will apply for early termination of policy.  Please note, Cancellation by Participating Member is ONLY cancellation of the Evidence of Insurance and is NOT considered Cancellation of the Master Policy or Cancellation of the Master Policyholder.

7. Termination Date of Coverage:  Coverage and benefits for the Participating Member under this insurance will terminate effective 11:59 PM, EST, on the next day following the end of the period for which Premium has been fully and timely paid, the termination date as shown on the Declaration for the Evidence of Insurance, the date the Participating Member first fails to meet or no longer meets the eligibility requirements for this insurance as set forth in the Master Policy and outlined in the Evidence of Insurance; or the 30th day after the Effective Date of the Evidence of Insurance, if the Participating Member is not a citizen of the USA but is located in the USA at the time of Application and has not departed the USA prior to such 30th day, unless the Participating Member is not eligible for any other medical insurance plan which is available to individuals similarly situated and located in the USA and has provided the Scheme Administrator an Affidavit of Eligibility.

8. Proof of Claim:  When the Scheme Administrator receives notice of a claim for benefits under this insurance it will provide the Participating Member with forms ("Claim Form") for filing Proof of Claim. The Claim Form is provided with all fulfillment documents issued by the Scheme Administrator. The Claim Form is available at all times via the Scheme Administrator's website at www.azimuthrisk.com. The Participating Member shall have ninety (90) days from the date the claim is incurred to submit a complete Proof of Claim to the Scheme Administrator. The Scheme Administrator may deny coverage for any Proof of Claim submitted thereafter or for incomplete Proofs of Claims. All Claim decisions made by the Scheme Administrator or on behalf of the Scheme Administrator are with the express consent of the Underwriters.

9. Filing a Claim: Notice of Claim should be submitted to: Azimuth risk Solutions, LLC, P O Box 627, Indianapolis, IN 46206. The following items must be submitted to be considered a complete Proof of Claim eligible for consideration of payment:

   a. A duly completed and signed Claim Form; and
   b. All original itemized bills from all Physicians, Hospitals and other healthcare or medical service providers involved with respect to the claim; and
   c. All original receipts for any expenses that have been incurred or paid by or on behalf of the Participating Member(s) with respect to the claim(s).

10. Appealing a Claim:  In the event the Scheme Administrator denies all or part of a claim, the Participating Member shall have ninety (90) days from the date that the notice of denial was mailed to the Participating Member's last known place of residence or mail forwarding address to file a written appeal with the Scheme Administrator. Upon receipt of a written appeal, the Scheme Administrator will respond in writing as soon as reasonably practicable and in any event within ninety (90) days from receipt thereof.

11. **Arbitration of a Claim:**   No claim for benefits for which liability, eligibility, or coverage under this insurance has been denied in whole or in part by the Scheme Administrator nor any other dispute or controversy arising under or related to this insurance shall be arbitral or subject to arbitration under any circumstances or for any reason.

12. **Assignment, Change or Waiver:**   Notwithstanding any law, statute, judicial decision, or rule to the contrary which may be or may purport to be otherwise applicable within the jurisdiction, locale or forum state of any healthcare provider, no transfer or assignment of any of the Participating Member's rights, benefits or interests under this insurance shall be valid, binding on, or enforceable against the Scheme Administrator unless first expressly agreed and consented to in writing by the Scheme Administrator. Any such purported transfer or assignment not in compliance with the foregoing Terms shall be void and without effect as against the Scheme Administrator, and the Scheme Administrator shall have no liability of any kind under this insurance to any such purported transferee or assignee with respect thereto. The Terms of the Master Policy as evidenced by the Evidence(s) of Insurance issued by the Master Policy shall not be waived or changed except by the express written agreement of the Scheme Administrator.

13. **Insolvency:**   The insolvency, bankruptcy, financial impairment, receivership, and voluntary plan of arrangement with creditors or dissolution of the Master Policyholder or any Participating Member shall not impose upon the Scheme Administrator any liability or obligation other than that specifically included in this insurance.

14. **Other Insurance:**  The Scheme Administrator shall not be obligated to provide any benefits or to pay any claim under this insurance if there is any other insurance, membership benefit, government program, reimbursement or indemnification coverage, right of contribution, recoupment or recovery, contract, or other third-party obligation or provision of benefits ("Other Coverage") which would, or would but for the existence of this insurance, be available or obligated to provide such benefit or to pay such claim, except in respect of any excess beyond the amount payable or provided under such Other Coverage had this insurance not been effected. The Scheme Administrator shall not be obligated to provide any benefit or to pay any claim in respect to Treatment or supplies furnished by any program or agency funded by any government.

15. **Applicable Currency:**  All benefit amounts, coverages, monetary limits and sub-limits, and other amounts stated in the Master Policy, the Application, the Declaration, the Evidence of Insurance, and in any Riders, including Premium, are in U.S. dollars.

16. **Cooperation:**  The Participating Member and his/her Physicians, Hospitals and other healthcare and medical service providers and suppliers shall undertake to cooperate fully with the Scheme Administrator in reviewing, investigating, adjudicating and/or administering any claim for benefits under this insurance, including granting full right of access to all relevant or related medical documentation, medical histories, reports, lab or test results, x-rays, and other available evidence relating to or affecting the investigation, adjudication or administration of the claim. The Scheme Administrator may deny coverage for a claim when there has been a refusal or material failure to so cooperate.

17. **Misrepresentation:**  Any misstatement, omission, concealment or fraud, either in the Participating Member's Application which forms a part of the Master Policy or Evidence of Insurance issued by the Master Policy, or in relation to any statement, certification or warranty made by the Participating Member or their representatives, agents or proxies, whether in writing or otherwise, to the Scheme Administrator or their respective agents, employees or representatives, or in connection with the making of any claim under this insurance, shall render the Master Policy null and void and all claims and benefits under this insurance shall be forfeited and waived.

18. **Subrogation Clause:**  The Participating Member undertakes to pursue in his/her own name and stead, and to fully cooperate with the Scheme Administrator in the prosecution of, any and all valid claims that he/she may have against any third party who may be liable arising out of any act, omission or occurrence which results or may result in a loss of payment or coverage of claim by the Scheme Administrator under this insurance, and to account to the Scheme Administrator for any amounts recovered in connection therewith, on the basis that the Scheme Administrator shall be reimbursed and entitled to recover first in full for any sums paid by it before the Participating Member shares in any amount so recovered. Should the Participating Member fail to so cooperate, account, or to prosecute any valid claims against any such third party or parties, and the Scheme Administrator thereupon or

otherwise becomes liable to make payment under the Terms of this insurance, then the Scheme Administrator shall be fully subrogated to all rights and interests of the Participating Member with respect thereto and may prosecute such claims in its own name as subrogee.

19. Right of Recovery:  In the event of overpayment by the Scheme Administrator of any claim for benefits under this insurance, **for any reason**, the Scheme Administrator shall have the right to a refund of and to recover the amount of overpayment from the Participating Member and/or the Hospital, Physician, or other provider of services or supplies, as the case may be.

20. Service of Suit: It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Participating Organization or Participating Member, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.   Nothing in this clause constitutes a waiver of Underwriters rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any state in the United States.  In any suit instituted against Underwriters hereunder, Underwriters will abide by the final decision of such Court, or of any Appellate Court in the event of an appeal. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Scheme Administrator hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Master Policy-holder or any Participating Organization or any Participating Member arising hereunder, and hereby reserves the right to designate an Attorney of the Scheme Administrators choice in conjunction with Underwriters, as its attorney-in-fact and agent for service of process to whom said officer or Commissioner is authorized to mail or serve such process or a true copy thereof.

21. Reinstatement of Coverage:  In the event coverage under this insurance lapses or is terminated for failure to pay Premium, the Participating Member may apply to the Scheme Administrator for reinstatement ("Reinstatement"). Reinstatement is at the sole option of the Scheme Administrator, and shall be subject to the Scheme Administrator's retained right, without obligation or liability of any kind, to reassess and make determination of acceptable risk in its sole and absolute discretion. In order to be considered for Reinstatement, the Participating Member must submit all of the following to the Scheme Administrator:

    a.  A written request for Reinstatement; and
    b.  A newly completed Reinstatement Application, which shall become a part of the Master Policy and any reinstated Evidence of Insurance; and
    c.  A written statement of health, including any relative medical records; and
    d.  A written statement giving full details of the reason for the previous failure to pay Premium when due or to accept renewal terms in a timely manner; and
    e.  Payment of all Premiums due and $100.00 reinstatement fee.

22. **Schedule of Benefits/Limits:**   Subject to the Terms of this insurance, including without limitation the Deductible and Coinsurance (unless otherwise expressly set forth to the contrary), and the various limits and sub-limits set forth below, the Scheme Administrator promises to provide the Participating Member the following benefits and coverage arising out of Injury or Illness incurred while the Evidence of Insurance is in effect. Note, the below Schedule of Benefits is for purposes of the Master Policy issued by the Master Policyholder; the **Beacon/Axis Series Group Insurance Trust (Anguilla).** The limits and sub-limits below are subject to the specific plan issued and full premium paid to the Scheme Administrator. The benefits, limits and sub-limits are subject to the Plan agreed upon by the Participating Member and Scheme Administrator, as defined by evidence of the Evidence of Insurance and the Declaration Page issued upon approval of the specific Plan.

| THE MERIDIAN SERIES BASIC SCHEDULE OF BENEFITS | | |
|---|---|---|
| **Maximum Limit** | $2,000,000 Maximum Limit | |
| **Deductibles** | $250, $500, $1,000, $2,500, $5,000, $10,000  per Member per Coverage Period | |
| **Family Deductible** | Maximum of 2 Deductibles per Family per Coverage Period | |
| **Coverage Area** | Area 1- Worldwide- Including U.S. & Canada | Area 2- Worldwide- Excluding US & Canada |
| **Coinsurance-** <br> **(Claims incurred in US or Canada)** | After the Deductible the Plan will pay 80% of the next $5,000 of Eligible Expenses, then 100% to the Overall Maximum Limit. The Coinsurance will be waived if expenses are incurred within the PPO. | |
| **Coinsurance-** <br> **(Claims incurred outside US or Canada)** | After the deductible the Plan will pay 100% of Eligible Expenses to the Overall Maximum Limit. | |
| **Pre-certification Penalty** | 50% | |
| **Pre-existing Condition** | $10,000 per Coverage Period (after24 months of continuous coverage). $50,000 Maximum Limit | |
| **Maternity- Normal Delivery & Complicated Delivery** | **OPTIONAL RIDER- $10,000 per Coverage Period ($50,000 Maximum Limit)** | |
| **Newborn Care** | Included as part of Maternity benefits for first 31 days of life | |
| **Human Organ/ Tissue Transplant** | $500,000 Maximum Limit, covered Transplants | |
| **Hospital Room and Board (Coverage Area 1)** | Average Semi-Private room rate | |
| **Hospital Room and Board (Coverage Area 2)** | Average Semi-Private room rate | |
| **Intensive Care Unit (Coverage Area 1)** | Usual, Reasonable and Customary (URC) | |
| **Intensive Care Unit (Coverage Area 2)** | Usual, Reasonable and Customary (URC) | |
| **Emergency Dental Due to Accident** | $500 per Coverage Period | |
| **Local Ambulance** | $1,500 per covered event (not subject to Deductible or Coinsurance) | |
| **Surgery** | Usual, Reasonable and Customary (Subject to deductible and co-insurance) | |
| **Prescription Medications** | Usual, Reasonable and Customary | |
| **Mental & Nervous Disorders** | $10,000 per Coverage Period for Outpatient treatment only (after 24 months of continuous coverage). | |
| **Wellness (Adult)** | $150 per Male age 30/ Female age 30 and over, per Coverage Period (after 12 months continuous coverage). Not subject to Deductible or Coinsurance. | |
| **Wellness (Child)** | $100 per Member age 18 and under, per Coverage Period (after 12 months continuous coverage). Not subject to Deductible or Coinsurance. | |
| **All Other Medical Expenses** | Usual, Reasonable, and Customary (URC) | |
| **Emergency Room  Illness** | Usual, Reasonable and Customary (subject to additional $250 Deductible if not admitted). | |
| **Emergency Room Accident** | Usual, Reasonable and Customary (URC) | |
| **Emergency Medical Evacuation** | $50,000 Maximum Limit, $25,000 Maximum Limit for ages 65 and older. | |
| **Return of Mortal Remains** | $25,000 Maximum Limit per Member (not subject to Deductible). | |
| **Emergency Reunion** | $7,500 Maximum Limit | |

With regard to the foregoing Schedule of Benefits/Limits, the references to "continuous coverage" mean continuous unbroken coverage under the Beacon/Axis Series Group Insurance Trust (Anguilla). The applicable benefits described will become first available to the Participating Member only at the end of the continuous Coverage Period so specified.

23. Eligibility:  If a Participating Member is not eligible, the Evidence of Insurance issued by the Master Policy will be Null and Void and all premiums paid will be refunded. In order to be eligible and qualified for coverage under this insurance, a Participating Member must:

    a. Compete and sign an Application (or be listed thereon by proxy as an applicant and proposed Participating Member) with all questions answered truthfully and completely; and

    b. Pay the required Premium on or before the Due Dates; and

    c. Receive written acceptance of his/her Application or renewal from the Scheme Administrator; and

    d.   Be at least fourteen (14) days old but not yet seventy-five (75) years old; and

    e.   Not be Pregnant, Hospitalized or Disabled on the Initial Effective Date; and

    f.   Not be HIV+ on the Initial Effective Date; and

    g.   if a United States citizen, must be residing outside of the USA as of the Effective Date (or renewal date) and  plan to  reside outside of the USA for at least six (6) of the next three hundred sixty four (364) days thereafter; or (ii) if not a United States citizen: (A) must reside outside the USA at time of Application (or renewal); or (B) must plan to reside outside of the USA continuously for at least six (6) months during the Coverage Period with departure from the USA not more than thirty (30) days after the Initial Effective Date or renewal effective date; or (C) if located inside the USA at the time of Application (or renewal), must not be eligible for any other medical insurance plan which is available to individuals similarly situated and located in the USA and must provide the Scheme Administrator an Affidavit of Eligibility.

24. Pre-Certification Provisions/Requirements:   Pre-certification is a general determination of Medical Eligibility only, and all such determinations are made by the Scheme Administrator (acting through its authorized agents and representatives) in reliance and based upon the completeness and accuracy of the information provided by the Participating Member and/or his/her relatives, guardians and/or healthcare providers at the time of Pre-certification. The Scheme Administrator reserves the right to challenge, dispute and/or revoke a prior determination of Medical Necessity based upon subsequent information obtained. Pre-certification is **not** an assurance, authorization, or verification of coverage, a verification of benefits, or a guarantee of payment. The fact that Treatment or supplies are Pre-certified by the Scheme Administrator does not guarantee the payment of benefits or the amount or eligibility of benefits. The Scheme Administrator's consideration and determination of a Pre-certification request, as well as any subsequent review or adjudication of all medical claims submitted in connection therewith, shall remain subject to all Terms and Conditions of this Evidence of Insurance, including exclusions for Pre-existing Conditions and other designated exclusions, benefit limitations, and the requirement that claims be Usual, Reasonable and Customary. Also, any consideration or determination of a Pre-certification request shall not be deemed or considered as the Scheme Administrator's approval, authorization or ratification of, recommendation for, or consent to any diagnosis or proposed course of Treatment. Neither the Scheme Administrator (nor anyone acting on their behalf) has any authority or obligation to select Physicians, Hospitals, or other healthcare providers for the Participating Member, or to make any diagnosis or medical Treatment decisions on behalf of the Participating Member, and all such decisions must be made solely and exclusively by the Participating Member and/or his/her family members or guardians, treating Physicians and other healthcare providers. If the Participating Member and his/her healthcare providers comply with the Pre-certification requirements of this Evidence of Insurance, and the Treatment or supplies are Pre-certified as Medically Necessary, the Scheme Administrator will reimburse the Participating Member for Eligible Medical Expenses incurred in relation thereto, subject to all Terms of this insurance, including the Deductible and Coinsurance. Eligibility for and payment of benefits are subject to all of the Terms of this insurance. The following Treatment and/or supplies must always be Pre-Certified for Medical Necessity by the Scheme Administrator:

    a.   Inpatient Treatment of any kind; and

    b.   Any Surgery or Surgical procedure; and

    c.   Care in an Extended Care Facility; and

    d.   Home Nursing Care generally; and

    e.   Durable Medical Equipment; and

    f.   Artificial limbs; and

    g.   All Covered Transplant Treatment; and

    h.   All Diagnostic testing such as MRI, CT Scan, PET Scan, and Ultrasounds.

25. General Requirements:   To Comply with the Precertification requirements of this insurance for the Treatment and services listed in #**24,** above, the Participating Member or his/her Physician must:

    a.   Contact the Scheme Administrator at the phone numbers printed on the ID card as soon as possible before Treatment is to be obtained; and

    b.   For Transplant Pre-Certification, contact the Scheme Administrator as soon as possible but always within seventy-two (72) hours of becoming a candidate for a Covered Transplant; and

    c.  Comply with the instructions of the Scheme Administrator and submit any information or documents required by the Scheme Administrator; and

    d.  Notify all Physicians, Hospitals and other healthcare providers that this insurance contains Pre-Certification requirements and ask them to fully cooperate with the Scheme Administrator.

26. Eligible Expenses:  Subject to the Terms of this insurance, including without limitation the Deductible, Coinsurance, and limits and sub-limits set forth in the Schedule of Benefits/Limits, **#22,** above, and the exclusions set forth in  **#27**, below, the Scheme Administrator will reimburse the Participating Member for the following costs, charges and expenses incurred by the Participating Member with respect to an Illness or Injury suffered or sustained by the Participating Member while the Evidence of Insurance issued by the Master Policy is in effect, so long as the costs, charges or expenses are Usual, Reasonable and Customary ("Eligible Medical Expenses"):

    a.  Charges incurred at a Hospital for:

        i.  Daily room and board and nursing services not to exceed the average semi-private room rate; and

        ii.  Daily room and board and nursing services in Intensive Care Unit; and

        iii.  Use of operating, Treatment or recovery room; and

        iv.  Services and supplies which are routinely provided by the Hospital to persons for use while Inpatient; and Emergency Treatment of an Injury, even if Hospital confinement is not required; and

        v.  Emergency Treatment of an Illness; however an additional $250 deductible will be required, unless the Participating Member is directly admitted to the Hospital as Inpatient for further Treatment of that Illness.

    b.  Charges incurred for surgery at an outpatient surgical facility:

        i.  Charges by a Physician for professional services rendered, including Surgery; provided, however, that charges by or for an assistant surgeon will be limited and covered at the rate of twenty percent (20%) of the Usual, Reasonable and Customary charge of the primary surgeon; and provided, further, that standby availability of a Physician or surgeon will not be deemed to be a professional service and is not eligible for coverage; and

    c.  Other charges incurred for surgery at an outpatient surgical facility, including services and supplies;

        i.  dressings, sutures, casts or other supplies that are Medically Necessary; and

        ii.  diagnostic testing using radiology, ultrasonographic or laboratory services (psychometric, behavioral and educational testing are not included); and

        iii.  basic functional artificial limbs, eye or larynx or breast prostheses, but not the replacement or repair  thereof; and

        iv.  reconstructive Surgery which is directly related to a Surgery which is covered under this insurance; and

        v.  radiation therapy or Treatment, and chemotherapy; and

        vi.  hemodialysis and the charges by a Hospital for processing and administration of blood or blood components, but not the cost of the actual blood or blood components; and

        vii.  oxygen and other gasses and their administration; and

        viii.  anesthetics and their administration by a Physician; and

        ix.  drugs which require prescription by a Physician for Treatment of a covered Illness or Injury, but not for the replacement of lost, stolen, damaged, expired or otherwise compromised drugs, and for a maximum supply of ninety (90) days of any one prescription; and

        x.  care in a licensed Extended Care Facility upon direct transfer from an acute care Hospital; and

        xi.  Home Nursing Care in bed by a qualified licensed professional, provided by a Home Health Care Agency upon direct transfer from an acute care Hospital; and

        xii.  Emergency local ambulance transport necessarily incurred in connection with Illness or Injury resulting in Hospitalization; and

        xiii.  Emergency Dental Treatment and Dental Surgery necessary to restore or replace sound natural teeth lost or damaged in an Accident that is covered under this insurance is $500 Maximum Limit per Coverage Period.

xiv.  If **Optional Maternity Rider** is purchased: routine and Medically Necessary Maternity care of the Participating Member; mother and her Newborn during the first thirty-one (31) days of life, if the delivery of the Newborn and the charges incurred are eligible for coverage and are covered under the Terms of this insurance the plan will pay $10,000 per coverage period ($50,000 Maximum Limit); and

xv.  Treatment of Mental or Nervous Disorders, provided the Participating Member has been continuously insured under this insurance plan for not less than twenty-four (24) months immediately preceding Treatment; and

xvi.  physical therapy prescribed by a Physician and performed by a professional physical therapist, and necessarily incurred to continue recovery from a covered Injury or covered Illness; and

d.  The  following charges made by a hospice:

    i.  Room and board charged by the Hospice and part-time nursing by a Registered Nurse when the following conditions apply:

    ii.  The Physician must certify that the Participating Member is terminally ill with six (6) months or less to live; and services for the Participating Member must be received in an Inpatient Hospice facility or in the Participating Member's home.

    iii.  Counseling for the patient and the patient's Family. Services must be rendered by a licensed social worker or a licensed pastoral counselor and are limited to $300  when the following condition applies:

    iv.  Services must be received prior to or within six (6) months after the patient's death; and payment will be limited to a  total of 15 visits per Family; and

e.  Other eligible expenses:

    i.  Medically Necessary rental of Durable Medical Equipment, up to the purchase price.

    ii.  Charges incurred for vision care, including materials such as eyeglasses, contact lenses; and

    iii.  Charges for any examination or fitting related to these devices, set in the Schedule of Benefits and limits after three hundred sixty four (364) days of continuous coverage.

f.  **Wellness Expenses:** Provided the Participating Member has been continuously insured under this Insurance plan for not less than twenty-four (24) months or as stated in the specific plan Schedule of Benefits and limits, and subject to the Terms of this insurance, the Scheme Administrator will reimburse the Participating Member for the following expenses incurred while the Coverage Period is in effect:

    i.  For Males thirty (30) years of age and older: one Routine Physical Exam, limited to $150 per Coverage Period, provided at least three hundred sixty four (364) days have elapsed since the Participating Member's most recent Routine Physical Exam; and

    ii.  For Females thirty (30) years of age and older: one Routine Physical Exam, limited to $150 per Coverage Period,  including expenses for mammography exams and pap smears, provided at least three hundred sixty four (364) days have elapsed since the Participating Member's most recent Routine Physical Exam; and

    iii.  For a Child, limited to $100 per Coverage Period:

    iv.  One Routine Physical Exam per Coverage Period, provided at least three hundred sixty four (364) days have elapsed since   the  Child's most recent Routine Physical Exam; and

    v.  Routine inoculations and vaccinations commonly administered to children less than eighteen (18) years of age in accordance with standard medical practice.

g.  **Transplant Expenses:** Subject to the Terms of this insurance, including without limitation the Deductible, Coinsurance, and limits and sub-limits set forth in the Schedule of Benefits/Limits set forth in **#22**, above, the Pre-certification provisions set forth in **#24**, above, and the Exclusions set forth in **#27** below, the Scheme Administrator will reimburse the Participating Member for the following costs, charges and expenses incurred by the Participating Member with respect to a Covered Transplant obtained or received by the Participating Member while the Evidence of Insurance issued by the Master Policy is in effect, so long as such costs, charges or expenses are Usual, Reasonable, and Customary:

    i.  Eligible Medical Expenses incurred by a live donor will be treated as if they were the expenses of the Participating Member receiving a Covered Transplant if the Participating Member received an organ or tissue of the live donor; and

    ii.  organ procurement and harvesting costs, excluding acquisition or purchase of the actual

> > organ or tissue, up to a maximum of $10,000; and
> > iii. Charges incurred for pre-transplant evaluation, the Covered Transplant procedure, re-transplantation (if incurred during the initial Covered Transplant Hospitalization), and post-transplant care; and
> > iv. Reasonable travel and lodging expenses of the Participating Member if travel of more than fifty (50) miles is necessary to receive the Covered Transplant Treatment and supplies from a Managed Transplant System Network Provider, up to a maximum of $5,000.
> > v. Covered transplants: Heart, Heart/lung, Lung, Kidney, Kidney/Pancreas, Liver and Allogenic and Autologous Bone Marrow.

Transplant Pre-certification: To become eligible for the transplant benefits under this insurance, the transplant must be a Covered Transplant, the Participating Member must receive all Covered Transplant Treatment and supplies from an independent transplant network provider approved by the Scheme Administrator ("Managed Transplant System Network"), and the Covered Transplant **must be** Pre-certified by the Scheme Administrator in accordance with the Terms of this insurance.

If the Participating Member receives Covered Transplant Treatment and supplies from a provider that is not an approved member of the Scheme Administrator's independent Managed Transplant System Network, or if the transplant is not a Covered Transplant or is not properly Pre-certified, **no transplant benefits shall be available under this insurance.** The Scheme Administrator shall not have any right, obligation, or authority of any kind to ultimately select Physicians, Hospitals, or other healthcare providers for the Participating Member or to make any medical Treatment decisions for or on behalf of the Participating Member regarding transplants, and all such decisions shall be made solely and exclusively by the Participating Member and/or his/her family members and treating Physicians and other healthcare providers. All claims for transplant benefits are subject to the Terms of this insurance.

27. Exclusions- All charges, costs, expenses and/or claims (collectively "Charges") incurred by the Participating Member and directly or indirectly relating to or arising from or in connection with any of the following acts, omissions, events, conditions, charges, consequences, claims, Treatment (including diagnoses, consultations, tests, examinations and evaluations related thereto), services and/or supplies are expressly excluded from coverage under this insurance, and the Scheme Administrator shall provide no benefits and shall have no liability therefor:

> a. War; Military Action; Terrorism- The Scheme Administrator shall not be liable for and will not provide coverage or benefits for any claim or Charges, Illness, Injury or other consequence, whether directly or indirectly, proximately or remotely occasioned by, contributed to by, or traceable to or arising in connection with any of the following acts or events (collectively, "Occurrences"):
> > i. war, invasion, act of foreign enemy hostilities, warlike operations (whether war be declared or not), or civil war;
> > ii. mutiny, riot, strike, military or popular uprising, insurrection, rebellion, revolution, military or usurped power;
> > iii. any act of any person acting on behalf of or in connection with any organization with activities directed towards the overthrow by force of the Government de jure or de facto or to the influencing of it by violence of any type; martial law or state of siege or any events or causes which determine the proclamation or maintenance of martial law or state of siege; or
> > iv. Terrorism: For the purpose of this insurance, an "Act of Terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s) committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any of the public, in fear. All other Terms, clauses and conditions remain unchanged.
> > v. Any claim, Charges, Illness, Injury or other consequence happening or arising during the existence of abnormal conditions (whether physical or otherwise), whether or not directly or indirectly, proximately or remotely occasioned by, or contributed to by, traceable to, or arising in connection with, any of the said Occurrences shall be deemed and considered to be consequences for which the Scheme Administrator shall not be liable under the Evidence of Insurance, except to the extent that the Participating Member shall prove

that such claim, Charges, Illness, Injury or other consequence happened independently of the existence of such abnormal conditions and/or Occurrences; and

b.  Pre-existing Conditions- Charges resulting directly or indirectly from or relating to any Pre-existing Condition are excluded from coverage under this insurance until the Participating Member has maintained coverage under this insurance plan continuously for at least twenty-four (24) months, and thereafter such Charges are limited in coverage as provided in #**22**, Schedule of Benefits/Limits, above; and

    i.  Illness or Surgery Within one-hundred and eighty180 Days- Charges for Treatment of the following Illnesses or Surgeries which manifest themselves and/or involve procedures which take place and/or are recommended during the first one-hundred eighty (180) days of coverage under this insurance plan, beginning on the Initial Effective Date: asthma, allergies, any condition of the breast, any condition of the prostate, tonsillectomy, adenoidectomy, hemorrhoids or hemorrhoidectomy, disorders of the reproductive system, diverticulitis, hysterectomy, hernia, intervertebral disc disease, gall stones or kidney stones, Note: Coverage and/or benefits for these Illnesses or Surgeries (or for similar or different Illnesses or Surgeries) may be separately or further limited and/or excluded under the Pre-existing Conditions exclusion and definition; and

c.  Maternity and Newborn Care- Charges for pre-natal care, delivery, post-natal care, and care of Newborns, are excluded from coverage under this insurance unless part of a covered maternity benefit subject to schedule of benefits and limits; and

d.  Mental or Nervous Disorders- Charges for Treatment of Mental or Nervous Disorders are excluded from coverage under this insurance until the Participating Member has maintained coverage under this insurance plan continuously for at least three hundred sixty four (364) days or as defined in the schedule of benefits and limits; and

e.  Wellness- Charges for Routine Physical Exams are excluded from coverage under this insurance until the Participating Member has maintained coverage under this insurance plan continuously for at least three hundred sixty four (364) days, and except as otherwise expressly provided in the Master Policy and/or any Evidence of Insurance issued by the Master Policy. In no event will the Scheme Administrator reimburse the Participating Member for more than one Routine Physical Exam during any three hundred sixty four (364) day period; and

f.  Charges for any Treatment or supplies that are:

    i.  not incurred, obtained or received by a Participating Member during the Coverage Period; and/or

    ii.  not presented to the Scheme Administrator for payment by way of a complete Proof of Claim within ninety (90) days of the date such Charges are incurred; and/or

    iii.  not administered or ordered by a Physician; and/or

    iv.  not Medically Necessary; and/or

    v.  provided at no cost to the Participating Member or for which the Participating Member is not otherwise liable; and/or

    vi.  in excess of Usual, Reasonable, and Customary; and/or

    vii.  incurred by a Participating Member who was HIV + at the Initial Effective Date of this insurance; whether or not the Participating Member had knowledge of his/her HIV status at that time and whether or not the Charges are incurred in relation to or as a result of said status; and/or

    viii.  provided by or at the direction or recommendation of a chiropractor, unless ordered in advance by a Physician; and/or

    ix.  performed or provided by a Relative of the Participating Member; and/or

    x.  not expressly included as Eligible Medical Expenses as defined in #**26**  above; and/or

    xi.  provided by a person who resides or has resided in the Participating Member's home; and/or

    xii.  required or recommended as a result of complications or consequences arising from or related to any Treatment, Illness, Injury, or supply excluded from coverage or which is otherwise not covered under this insurance; and

    xiii.  Charges incurred for telephone consultations or due to a failure to keep a scheduled appointment; and

g.  Charges incurred for Surgeries or Treatment or supplies which are:

    i.  Investigational, Experimental, or for Research Purposes, and/or

    ii.  related to genetic medicine or genetic testing, including without limitation

amniocentesis, genetic screening, risk assessment, prevention and/or to determine pre-disposition, genetic counseling, and/or gene therapy; and

h. Charges incurred while confined primarily to receive Custodial Care, Educational or Rehabilitation Care; and

i. Charges incurred for any surgery, Treatment or supplies relating to, arising from or in connection with, for, or as a result of:

    i. weight modification or any Inpatient, Outpatient, Surgical or other Treatment of obesity (including without limitation morbid obesity), including without limitation wiring of the teeth and all forms of bariatric Surgery by whatever name called, or reversal thereof, including without limitation intestinal bypass, gastric bypass, gastric banding, vertical banded gastroplasty, biliopancreatic diversion, duodenal switch, or stomach reduction or stapling; and/or

    ii. modification of the physical body in order to change or improve or attempt to change or improve the physical appearance or psychological, mental or emotional well-being of the Participating Member (such as but not limited to sex-change Surgery or Surgery relating to sexual performance or enhancement thereof); and/or

    iii. cosmetic or aesthetic reasons, except for reconstructive Surgery when such Surgery is Medically Necessary and is directly related to and follows a Surgery which was covered under this insurance; and/or

    iv. any Injury or Illness sustained while taking part in mountaineering activities where specialized climbing equipment, ropes or guides are normally or reasonably should have been used, Amateur Athletics, Professional Athletics, aviation (except when traveling solely as a passenger in a commercial aircraft), hang gliding and parachuting, snow skiing except for recreational downhill and/or cross country snow skiing (no cover provided whilst skiing in violation of applicable laws, rules or regulations; away from prepared and marked in-bound territories; and/or against the advice of the local ski school or local authoritative body), racing of any kind including by horse, motor vehicle (of any type) or motorcycle, spelunking, and sub aqua pursuits involving underwater breathing apparatus (except as otherwise expressly set forth in #**33** Recreational Underwater Activities). Practice or training in preparation for any excluded activity which results in injury will be considered as activity while taking part in such activity; and/or

    v. any Illness or Injury sustained while participating in any sporting, recreational or adventure activity where such activity is undertaken against the advice or direction of any local authority or any qualified instructor or contrary to the rules, recommendations and procedures of a recognized governing body for the sport or activity; and/or

    vi. any Illness or Injury sustained while participating in any activity where such activity is undertaken against medical advice; and/or

    vii. any Injury or Illness sustained as a result of being under the influence of or due wholly or partly to the effects of intoxicating liquor or drugs other than drugs taken in accordance with Treatment prescribed and directed by a Physician but not for the Treatment of Substance Abuse; and/or

    viii. any Injury or Illness sustained while operating a moving vehicle after consumption of intoxicating liquor or drugs, other than drugs taken in accordance with Treatment prescribed and directed by a Physician. For purposes of this exclusion, "vehicle" shall include both motorized devices for which a driver or operator license is required (including watercraft and aircraft) and non-motorized bicycles and scooters for which no permit or license is required; and/or

    ix. any willfully self-inflicted Injury or Illness; and/or

    x. any venereal disease; and/or

    xi. any testing for the following: **HIV,** seropositivity to the AIDS virus, AIDS related Illnesses, ARC Syndrome, AIDS; and/or

    xii. any Illness or Injury resulting from or occurring during the commission of a violation of law by the Participating Member, including, without limitation, the engaging in an illegal occupation or act, but excluding minor traffic violations; and/or

        xiii.  any Substance Abuse; and/or

        xiv.  speech, vocational, occupational, biofeedback, acupuncture, recreational, sleep or music therapy; and/or

        xv.  orthoptics, visual therapy or visual eye training; and/or

j.  The feet, including without limitation:

        i.  orthopedic shoes; orthopedic prescription devices to be attached to or placed in shoes; Treatment  of weak, strained, flat, unstable or unbalanced feet; metatalgia, bone spurs, hammertoes or bunions; and any Treatment or supplies for corns, calluses or toenails; provided, however, that claims for Treatment or supplies for the feet may be eligible for coverage under this insurance at the sole option of the Scheme Administrator and subject to all other Terms of this insurance when related to:

        ii.  an Injury to the foot arising from an Accident covered hereunder; or

        iii.  an Illness for which foot Surgery is Medically Necessary and determined to be the only appropriate method of Treatment; and/or

k.  any hair loss, including without limitation wigs, hair transplants or any drug that promises to promote hair growth, whether or not prescribed by a Physician; and/or

l.  any sleep disorder; and/or

m.  any exercise program, whether or not prescribed or recommended by a Physician; and/or

n.  any exposure to any non-medical nuclear or atomic radiation, and/or radioactive material(s); and/or

o.  any organ or tissue or other transplant or related services, Treatment or supplies, except for Covered Transplants as defined herein and covered pursuant to the Terms of this insurance; and/or

        i.  any artificial, non-human organs, or mechanical devices designed to replace human organs temporarily or permanently; and/or

        ii.  any efforts to keep a donor alive for a transplant procedure, whether or not the transplant procedure is a Covered Transplant; and/or

        iii.  any transplant expenses incurred outside the Scheme Administrator's approved independent Managed Transplant System Network; and/or

        iv.  any Covered Transplant in excess of one (1) during any three hundred sixty four (364) day period of coverage under this insurance plan, except re-transplantation Charges if incurred during the initial Covered Transplant Hospitalization; and

p.  Charges incurred for any Treatment or supply that either promotes or prevents or attempts to promote or prevent conception; including but not limited to: artificial insemination; oral contraceptives, Treatment for infertility or impotency; vasectomy or reversal of vasectomy; sterilization or reversal of sterilization; and

q.  Charges incurred for any Treatment or supply that either promotes, enhances or corrects or attempts to promote, enhance or correct impotency or sexual dysfunction; and

r.  Charges incurred for Dental Treatment, except for Emergency Dental Treatment necessary to repair or replace sound natural teeth lost or damaged in an Accident covered hereunder or as necessary treatment of sudden, unexpected pain to sound natural teeth, and subject to the limits set forth in the Schedule of Benefits/Limits; and

s.  Charges incurred for eyeglasses, contact lenses, hearing aids, hearing implants and Charges for any Treatment, supply, examination or fitting related to these devices, or for eye refraction for any reason; and

t.  Charges incurred for eye Surgery, such as but not limited to radial keratotomy, when the primary purpose is to correct or attempt to correct nearsightedness, farsightedness, or astigmatism; and

u.  Charges incurred for Treatment of the temporomandibular joint; and

v.  Charges incurred by the Participating Member for the Treatment of his/her Newborns (or for supplies related thereto); and

w.  Charges incurred for any immunizations and/or routine physical exams except for the eligible benefits and covered expenses provided for under **#26**, or as otherwise expressly provided for hereunder; and

x.  Charges incurred for any travel, meals, transportation and/or accommodations, except as otherwise expressly provided for in this insurance; and

y.  Any taxes, assessments, charges, fees or surcharges imposed by any governmental agency or authority:

    i.  arising out of or as a result of any Treatment or supplies received by the Participating Member, or

    ii.  based upon the Scheme Administrator's election hereunder, if any, to pay benefits directly to providers, or

    iii.  for any other reason; and

z.  Complementary Medicine: Charges or expenses incurred for nonprescription drugs, medicines, vitamins, food extracts, or nutritional supplements; IV vitamin or herbal therapy; drugs or medicines not approved by the U.S. Food and Drug Administration or which are considered "off-label" drug use; and for drugs or medicines not prescribed by a Physician.

28. Emergency Medical Evacuation Benefit: Subject to the Maximum Limit set forth in the Schedule of Benefits/Limits, and the other Terms of this insurance, including the **Conditions and Restrictions** set forth below, the Scheme Administrator will reimburse the Participating Member for the following expenses incurred by the Participating Member arising out of or in connection with an Emergency Medical Evacuation occurring while the Evidence of Insurance is in effect:

a.  Emergency air transportation to a suitable airport nearest to the Hospital where the Participating Member will receive Treatment; and

b.  Emergency ground transportation necessarily preceding Emergency air transportation and from the destination airport to the Hospital where the Participating Member will receive Treatment.

29. Conditions and Restrictions: To be eligible for coverage for Emergency Medical Evacuation benefits the Participating Member must be in compliance with all Terms of this insurance. The Scheme Administrator will provide Emergency Medical Evacuation benefits only when the condition, Illness, Injury or occurrence giving rise to the Emergency Medical Evacuation is covered under the Terms of this insurance. The Scheme Administrator will provide Emergency Medical Evacuation benefits only when all of the following conditions are met:

a.  Medically Necessary Treatment cannot be provided locally; and

b.  transportation by any other method would result in loss of the Participating Member's life; and

c.  Emergency Medical Evacuation is recommended by the attending Physician who certifies to the matters in subparagraphs **#28 a** and **#28 b** above ; and

d.  Emergency Medical Evacuation is agreed to by the Participating Member or a Relative of the Participating Member; and

e.  Emergency Medical Evacuation is approved in advance and all arrangements are coordinated by the Scheme Administrator; and

f.  the condition, Illness, Injury or occurrence giving rise to the Emergency Medical Evacuation occurred suddenly and/or spontaneously, and without: (i) advance warning, (ii) advance Treatment, diagnosis or recommendation for Treatment by a Physician, or (iii) prior manifestation of symptoms or conditions which would have caused a prudent person to seek medical attention prior to the onset of the Emergency.

The Scheme Administrator will arrange Emergency Medical Evacuation only to the nearest Hospital that is qualified to provide the Medically Necessary Treatment to prevent the Participating Member's loss of life. The Scheme Administrator will use its best efforts to arrange with independent, third-party contractors any Emergency Medical Evacuation, within the least amount of time reasonably possible. The Participating Member understands and agrees that the timeliness, duration, and outcome of an Emergency Medical Evacuation can be affected by events and/or circumstances which are not within the direct control of the Scheme Administrator, including but not limited to: availability and performance of competent transportation equipment and staff; delays or restrictions on flights or other modes of transportation caused by mechanical problems, government officials, telecommunications problems, and/or geographical and weather conditions; and other acts of God.

The Participating Member agrees to hold the Scheme Administrator and its agents and representatives harmless from, and agrees that the Scheme Administrator and its agents and representatives shall not be held liable for, any delays, losses, damages or other claims that arise from or are caused by the acts or omissions of such independent third-party contractors, or that arise from or are caused by any acts, omissions, events or circumstances that are not within the direct and immediate control of the Scheme Administrator and/or its authorized agents and representatives, including without limitation the events and circumstances set forth above.

30. Emergency Reunion: Subject to the Terms of this insurance, Emergency Reunion expenses will be reimbursed to the Participating Member as outlined in the Schedule of Benefits/Limits in cases where there has been an Emergency Medical Evacuation covered under the Terms of this insurance. Subject to the Deductible and Coinsurance and other limits as specified in the Schedule of Benefits/Limits, and subject to the Conditions and Restrictions set forth below, the following expenses incurred in respect of travel by a Relative or friend of the Participating Member, will be reimbursable to the Participating Member upon the recommendation and prior approval of the Scheme Administrator:

    a. the cost of an economy air ticket for one Relative or friend to the airport serving the area where the Participating Member is Hospitalized as a result of the Emergency or is to be Hospitalized as a result of the Emergency Medical Evacuation, and return from either of such locations to the point of their original departure;  and

    b. reasonable and necessary travel, meals (maximum of $25 per day), transportation and accommodation expenses incurred in relation to the Emergency Reunion (but excluding entertainment).

31. Conditions and Restrictions:

    a. the Coverage Period for the Emergency Reunion shall not exceed fifteen (15) days, including travel days; and

    b. the Emergency Reunion must be due to an Emergency Medical Evacuation covered under the Terms of this insurance; and the Participating Member must be so seriously ill that the attending Physician deems it necessary and recommends the presence of a Relative or friend to either the location where the Participating Member is being evacuated from or the destination of the evacuation, whichever is considered by the attending Physician and the Scheme Administrator to be the more reasonable; and all Emergency Reunion travel, transportation and accommodation arrangements and benefits must be coordinated and approved in advance by the Scheme Administrator in order to be eligible for coverage under this insurance.

32. Return of Mortal Remains: In the event of the death of the Participating Member as a result of an Illness or Injury covered under this insurance while the Participating Member is outside of his/her Home Country, the Scheme Administrator will reimburse the estate of the Participating Member up to US $25,000 for the return of the Participating Member's Mortal Remains to his/her Home Country (but not including any costs of burial); provided, however, that the Scheme Administrator must coordinate and approve all costs related to the return of the Participating Member's Mortal Remains in advance as a condition to this benefit.

33. Recreational Underwater Activities - Subject to the Terms of this insurance, including without limitation the Deductible, Coinsurance, and limits and sub-limits set forth in the Schedule of Benefits/Limits, and the Exclusions set forth in #**22** and #**27** above, and the Special Exclusions and Limitations below, the Scheme Administrator will reimburse the Participating Member for Eligible Medical Expenses incurred by the Participating Member with respect to an Illness or Injury suffered or sustained by the Participating Member while engaged in Sports Diving during the Coverage Period, so long as the same is carried out in strict accordance with the guidelines, codes of good practice, and recommendations for safe diving practices as laid down by an Authoritative Diving Body.

    a. Special Exclusions and Limitations: In addition to the Exclusions set forth in #**27** above, this insurance does not cover any charges, costs, expenses and/or claims incurred by the Participating Member relating to, arising from, as a consequence of, or in connection with, directly or indirectly, any of the following acts, omissions, events, occurrences or conditions:

        i. Diving by the Participating Member without holding a recognized Certificate issued by an Authoritative Diving Body for the type of diving being undertaken, or not under professional instruction;

        ii. Diving without proper and well-maintained equipment in good working order and/or contrary to the guidelines, codes of good practice and/or recommendations as laid down by the Authoritative Diving Body under which the Participating Member has been certified;

        iii. Diving to depths greater than thirty (30) meters, or diving requiring decompression stops;

        iv. Solo diving;

        v. Any form of cave diving;

        vi. Flying within twenty-four (24) hours of the last dive or diving within ten (10) hours of flying;

     vii.  Diving for hire, reward, or treasure;

     viii.  Diving while suffering from a cold, influenza or any other condition, Illness or Injury causing an obstruction of the sinuses or ears, or diving while otherwise medically unfit to dive;

     ix.  Diving by a Participating Member under twelve (12) years of age or over sixty-five (65) years of age;

     x.  Willfully self-inflicted Injury or Illness, the effects of alcohol or drugs (other than as prescribed by a licensed Physician in full awareness of the Participating Member's sub-aqua activities) and any self exposure to needless peril (unless in an attempt to save human life);

     xi.  Any condition for which the Participating Member was undergoing, recovering from or awaiting Treatment immediately prior to the sub-aqua activities;

     xii.  Diving with artificial or other underwater breathing apparatus containing any gas other than compressed air.

It is a condition precedent to the Scheme Administrator's liability under this insurance that any prospective diver applying for coverage under this insurance is medically fit to dive. If in any doubt, the Participating Member should refrain from participating in S.C.U.B.A. diving until medical advice and approval has been obtained from a qualified Physician.

34.  **DEFINITIONS:** Certain words and phrases used in the Master Policy and the Evidence(s) of Insurance issued by the Master Policy are defined below. Other words and phrases may be defined elsewhere in the Master Policy or Evidence(s) of Insurance issued by the Master Policy, including where they are first used.

**Accident:** A sudden, unintentional, and unexpected occurrence caused by external, visible means and resulting in physical Injury to the Participating Member.

**Accidental Death:** A sudden, unintentional, and unexpected death of a Participating Member resulting from physical bodily injury and not the result of murder or suicide; Illness or Treatment.

**Accidental Dismemberment:** A sudden, unintentional, and unexpected occurrence caused by external, visible means and resulting in the permanent loss by physical separation of a hand at or above the wrist or of a foot at or above the ankle and includes permanent total and irrecoverable loss of use of hand, arm, leg or one or both eyes.

**Affidavit of Eligibility:** The properly completed form provided to the Scheme Administrator that certifies that an applicant is eligible to be covered under this insurance plan because they do not meet the citizenship and/or residency requirements of other insurance companies in the area where they reside.

**AIDS:** Acquired Immune Deficiency Syndrome, as that term is defined by the United States Centers for Disease Control.

**Amateur Athletics:** An amateur or other non-professional sporting, recreational, or athletic activity that is organized, sponsored and/or sanctioned, and/or involves regular or scheduled practices, games and/or competitions. This definition does not include athletic activities that are non-contact and engaged in by the Participating Member solely for recreational, entertainment or fitness purposes.

**Application:** The fully answered and signed individual or family application/enrollment form submitted by or on behalf of the Participating Member for acceptance into, renewal of coverage under, or Reinstatement in this insurance plan, which by this reference shall be incorporated in and become a part of the Master Policy and/the Evidence of Insurance. Any insurance agent/broker assigned to or assisting with the Application is the representative of the applicant/Participating Member and is not an agent or representative for or on behalf of the Scheme Administrator, Underwriters and/or the Master Policyholder.

**ARC:** AIDS related complex, as that term is defined by the United States Centers for Disease Control.

**Beneficiary:** The person(s), executers or administrators entitled to receive payment of Benefits.

**Canada:** A federated country in North America made up of ten provinces and three territories, (Canada).

**Coinsurance:** The payment by or obligations of the Participating Member for payment of Eligible Medical Expenses at the percentage specified in the Schedule of Benefits/Limits contained herein and exclusive of the Deductible.

**Complicated Delivery**: A delivery in which some condition puts the mother, the developing fetus, or both at higher-than-normal risk for complications during or after the delivery.

**Coverage Period:** The period beginning on the Effective Date of Coverage of the Evidence of Insurance and ending on the earliest of the following dates: (i) the termination date specified in the Declaration, or (ii) the termination date as determined in accordance with #**15** above. The Coverage Period can be no more

than three hundred sixty four (364) consecutive days.

**Covered Transplant:** A transplant involving the heart, heart/lung, lung, kidney, kidney/pancreas, liver and allogenic or autologous bone marrow.

**Custodial Care:** Those types of care or services, wherever furnished and by whatever name called, that are designed primarily to assist an individual.

**Death:** Complete and irreversible cessation of life.

**Declaration:** The Declaration of Insurance issued by the Scheme Administrator to the Participating Member contemporaneously with the Evidence of Insurance (and/or upon renewal or Reinstatement hereof) evidencing the Participating Member's insurance coverage under the Master Policy as evidenced by the Evidence of Insurance, which Declaration shall be incorporated in and become a part of the Master Policy. The Declaration serves as a descriptive document highlighting the coverage limits, deductible(s), coverage dates, amendments and/ or riders, and names of Participating Members for all Evidence of Insurance issued by the Scheme Administrator on behalf of the Master Policyholder and Underwriters.

**Deductible:** The dollar amount of Eligible Medical Expenses specified in the Declaration, that the Participating Member must pay per Coverage Period prior to receiving benefits under this insurance, and exclusive of Coinsurance.

**Dental Treatment:** Treatment or supplies relating to the care, maintenance or repair of teeth, gums or bones supporting the teeth, including dentures and preparation for dentures.

**Dependent Child/Children:** A Participating Member who is less than eighteen (18) years of age at time of Application and shares your home for at least half the year (if divorced, the child may live with former spouse); and must **not** provide over one-half of his/her own support (scholarships excluded); or must be less than twenty-four (24) years of age at time of Application and a full-time student and claim your residence as his/her official residence while away at school; and must <u>not</u> provide over one-half of his/her own support (scholarships excluded); and must be your biological, step, or legally adopted child/children.

**Disabled:** A person who has a congenital or acquired mental or physical defect that interferes with normal functioning of the body system or the ability to be self-sufficient.

**Durable Medical Equipment (DME):** Durable Medical Equipment consists of the following items: a standard basic hospital bed; and/or a standard basic wheel chair.

**Educational or Rehabilitative Care:** Care for restoration (by education or training) of a person's ability to function in a normal or near normal manner following an Illness or Injury. This type of care includes, but is not limited to, vocational or occupational therapy, and speech therapy.

**Effective Date; Effective Date of Coverage:** The date coverage for the Participating Member begins under the Terms of the Master Policy and the Evidence of Insurance, as indicated on the Declaration.

**Eligible Medical Expenses:** As defined in #26 above.

**Emergency:** A medical condition manifesting itself by acute signs or symptoms which could reasonably result in placing the Participating Member's life or limb in danger if medical attention is not provided within twenty-four (24) hours.

**EST:** U.S. Eastern Standard Time.

**Evidence of Insurance:** The document issued by the Master Policyholder to the Participating Member, which describes and provides an outline and evidence of eligible coverage and benefits payable to or for the benefit of the Participating Member under the Master Policy, and which includes the Participating Member's Application and any Riders attached thereto.

**Expenses Incurred:** Expenses rendered by a Participating Member that have or may not yet have been paid by the responsible parties.

**Experimental:** Any Treatment that includes completely new, untested drugs, procedures, or services, or the use of which is for a purpose other than the use for which they have previously been approved; new drug procedure or service combinations; and alternative therapies which are not generally accepted standards of current medical practice.

**Extended Care Facility:** An institution, or a distinct part of an institution, which is licensed as a Hospital, Extended Care Facility or rehabilitation facility by the state or country in which it operates; is regularly engaged in providing twenty-four (24)-hour skilled nursing care under the regular supervision of a Physician and the direct supervision of a Registered Nurse; maintains a daily record on each patient; provides each patient with a planned program of observation prescribed by a Physician; provides each patient with active Treatment of an Illness or Injury. Extended Care Facility does not include a facility primarily for rest, the aged, Substance Abuse, Custodial Care, nursing care, or for care of Mental or Nervous Disorders or the mentally incompetent.

**Family:** A Participating Member and his/her spouse who is covered as a Participating Member under this

insurance plan and his/her dependent Child or Children (see definition of Dependant Child; Children) who are under the age of eighteen (18) or less than twenty-four (24) years of age at time of Application and a full-time student and claim your residence as his/her official residence while away at school and covered as Participating Members under this insurance plan.

**High School Sports Injury:** Injury and or Injuries resulting from an Accident while participating in a High School sanctioned game by a properly enrolled High School student.

**HIV +:** Laboratory evidence defined by the United States Centers for Disease Control as being positive for Human Immunodeficiency Virus infection.

**Home Country:** The country of which the Participating Member is a citizen or national; or maintains his/her residence or usual place of abode; or the country of which the Participating Member is the possessor of a validly issued passport.

**Home Health Care Agency:** A public or private agency or one of its subdivisions, which operates pursuant to law; and is regularly engaged in providing Home Nursing Care under the supervision of a Registered Nurse; and maintains a daily record on each patient; and provides each patient with a planned program of observation and Treatment prescribed by a Physician.

**Home Nursing Care:** Services, provided by a Home Health Care Agency and supervised by a Registered Nurse, which are directed toward the personal care of a patient, provided always that such care is in lieu of Medically Necessary Inpatient care.

**Hospice:** An institution which operates as a hospice; and is licensed by the state or country in which it operates; and operates primarily for the reception, care and palliative control of pain for terminally ill persons who have, as certified by a Physician, a life expectancy of not more than six (6) months.

**Hospital:** An institution which operates as a hospital pursuant to law;  is licensed by the state or country in which it operates; operates primarily for the reception, care, and treatment of sick or injured persons as Inpatients;  provides twenty-four (24)-hour nursing service by Registered Nurses on duty or call; has a staff of one or more Physicians available at all times; provides organized facilities and equipment for diagnosis and treatment of acute medical, surgical or mental/nervous conditions on its premises; and is not primarily a long-term care facility, Extended Care Facility, nursing, rest, Custodial Care, or convalescent home, a place for the aged, drug addicts, alcoholics or runaways; or similar establishment.

**Hospitalization; Hospitalized:** Confined and/or treated in a Hospital as an Inpatient.

**Illness:** A sickness, disorder, illness, pathology, abnormality, ailment, disease or any other medical, physical or health condition. Illness does not include learning disabilities, or attitudinal or disciplinary problems.

**Initial Effective Date:** The date (most recent, if more than one) the Participating Member first obtains coverage under the Beacon/Axis Series family of  Insurance plans and maintains continuous unbroken coverage thereafter.

**Injury:** Bodily injury resulting from an Accident.

**Inpatient**: A person who is an overnight resident patient of a Hospital, using and being charged for room and board.

**Intensive Care Unit:** A Cardiac Care Unit or other unit or area of a Hospital that meets the required standards of the Joint Commission on Accreditation of Healthcare Organizations for Special Care Units.

**Investigational:** Treatment that includes drugs, procedures, or services which are still in the clinical stages of evaluation and not yet released for distribution by the US Food and Drug Administration.

**Master Policyholder:** The Beacon/Axis Series Group Insurance Trust, (Anguilla).

**Maximum Limit:** The cumulative total dollar amount of benefit payments and/or reimbursements available to a Participating Member under this insurance during the Participating Member's Coverage Period. When the Maximum Limit is reached, no further benefits, reimbursements or payments will be available under this insurance.

**Medically Necessary; Medical Necessity:** A Treatment or supply which is necessary and appropriate for the diagnosis or Treatment of an Illness or Injury based on generally accepted standards of current medical practice as determined by the Scheme Administrator. By way of example but not limitation, a Treatment or supply will not be considered Medically Necessary or a Medical Necessity if it is provided or obtained only as a convenience to the Participating Member or his/her provider; and/or if it is not necessary or appropriate for the Participating Member's Treatment, diagnosis or symptoms; and/or if it exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate, and appropriate diagnosis or Treatment.

**Mental or Nervous Disorders:** A mental, nervous, or emotional Illness which generally denotes an Illness of the brain with predominant behavioral symptoms; or an Illness of the mind or personality, evidenced by abnormal behavior; or an Illness or disorder of conduct evidenced by socially deviant behavior.

Mental or Nervous Disorders include without limitation: psychosis; depression; schizophrenia; bipolar affective disorder; and those psychiatric Illnesses listed in the current edition of the Diagnostic and Statistical Manual for Mental Disorders of the American Psychiatric Association. Mental or Nervous Disorder does not include learning disabilities, or attitudinal or disciplinary problems. For purposes of this insurance, Mental or Nervous Disorder does not include Substance Abuse.

**Mortal Remains:** The bodily remains or ashes of a Participating Member.

**Newborn:** An infant from the moment of birth through the first thirty-one (31) days.

**Normal Delivery:** A Vaginal delivery with no unexpected complications before or after delivery.

**Other Insurance:** As defined in #**14** above.

**Outpatient:** A person who receives Medically Necessary Treatment by a Physician or other healthcare provider that does not require an overnight stay in a Hospital.

Participating Member: The person(s) named as the Participating Member(s) on the Declaration.

**Physician:** A duly licensed practitioner of the medical arts. A Physician must be currently licensed by the state or country in which the services are provided, and the services must be within the scope of that license.

**Pre-certification; Pre-certify:** A general determination of Medical Necessity, only, made in reliance and based upon the completeness and accuracy of the information provided at the time thereof. Pre-certification is not an assurance, authorization, or verification of coverage, a verification of benefits, or a guarantee of payment. See #**24** above, for further details.

**Pre-existing Condition:** Any Illness, Injury or Mental or Nervous Disorder that, with reasonable medical certainty, existed on or at any time prior to the Initial Effective Date of this insurance, whether or not previously manifested or symptomatic, diagnosed, treated or disclosed on the Application or on any Claim Form or otherwise, including any chronic, subsequent or recurring complications or consequences associated therewith or arising or resulting therefrom.

**Premium:** The premium payments required to effectuate and maintain the Participating Member's insurance coverage and benefits under this insurance, in the amounts and at the times ("Due Dates") established by the Scheme Administrator in its sole discretion from time to time.

**Pregnancy; Pregnant:** The process of growth and development within a woman's reproductive organs of a new individual from the time of conception through the phases where the embryo grows and fetus develops to birth.

**Primary Beneficiary:** The Beneficiary (ies) named by the Participating Member as the first party entitled to Benefits.

**Principal Sum:** The Benefit based upon the attained age of the Participating Member.

**Professional Athletics:** A sport activity, including practice, preparation, and actual sporting events, for any individual or organized team that is a member of a recognized professional sports organization, is directly supported or sponsored by a professional team or professional sports organization, is a member of a playing league that is directly supported or sponsored by a professional team or professional sports organization; or has any athlete receiving for his or her participation any kind of payment or compensation, directly or indirectly, from a professional team or professional sports organization.

**Registered Nurse:** A graduate nurse who has been registered or licensed to practice by a State Board of Nurse Examiners or other state authority, and who is legally entitled to place the letters "R.N." after his or her name.

**Relative:** A parent, guardian, spouse, son, daughter, or immediate family member of the Participating Member.

**Rider:** Any exhibit, schedule, attachment, amendment, endorsement, or other document attached to, issued in connection with, or otherwise expressly made a part of or applicable to, the Master Policy, the Evidence of Insurance, or the Application, as the case may be.

**Routine Physical Exam:** Examination of the physical body by a Physician for preventative or informative purposes only, and not for the Treatment of any Illness or Injury.

**Scheme Administrator:** The "Scheme Administrator", as referred to herein; Azimuth Risk Solutions, LLC, acts solely as the disclosed and authorized agent and representative for and on behalf of the Master Policyholder and Underwriters, and has and shall have no direct, indirect, joint, several, separate, individual, or independent liability or obligation of any kind under the Master Policy or the Evidence of Insurance to the Participating Member or to any other person or entity. Azimuth Risk Solutions, LLC, 1 N. Pennsylvania St. Ste 200, Indianapolis, Indiana 46204, USA. Telephone Number 317-644-6291 or

888-201-8050, Fax Number 317-423-9620 or 888-201-8851, Website: www.azimuthrisk.com, Email: service@azimuthrisk.com.

**Short Rate Cancellation Table:** The table used by the Scheme Administrator to calculate Short Rate Earned Premium in the event of cancellation. A copy of this table is available to the Participating Member upon request.

**Sports Diving:** Recreational underwater diving activities requiring the use of underwater or artificial breathing apparatus, and carried out in strict accordance with the guidelines, codes of good practice, and recommendations for safe diving practices as laid down by an Authoritative Diving Body.

**Substance Abuse:** Alcohol, drug or chemical abuse, misuse, illegal use, overuse or dependency.

**Sudden Onset of a Pre-Existing Condition:** An unexpected outbreak or recurrence of a Pre-existing Condition, which occurs unexpectedly and without advance warning, either in the form of Physician recommendation or symptoms which would have caused a prudent person to seek medical attention prior to the outbreak or recurrence.  Treatment must be obtained within twenty-four (24) hours of the sudden and unexpected occurrence of pain.

**Surgery or Surgical Procedure:** An invasive diagnostic or surgical procedure; or the Treatment of Illness or Injury by manual or instrumental operations performed by a Physician while the patient is under general or local anesthesia.

**Terms:** Terms, provisions, conditions, definitions, limits, sub-limits, limitations, wordings, restrictions, qualifications and/or exclusions.

**Terrorism:** An act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s) committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any  section of the public, in fear. All other Terms, clauses and conditions remain unchanged.

**Treatment:** Any and all services and procedures rendered in the management and/or care of a patient for the purpose of identifying, diagnosing, treating, curing, preventing, controlling and/or combating any Illness or Injury, including without limitation: verbal or written advice, consultation, examination, discussion, diagnostic testing or evaluation of any kind, pharmacotherapy or other medication, and/or Surgery.

**Unexpected:** Sudden, unintentional, not expected, and unforeseen.

**U.S.:** The United States of America and or any of its territories.

**Usual, Reasonable and Customary:** The most common charge for similar services, medicines, or supplies within the area in which the charge is incurred, so long as those charges are reasonable. The Scheme Administrator reserves the right to determine, in the reasonable exercise of its discretion, whether charges are Usual, Reasonable and Customary. In determining whether a charge is Usual, Reasonable and Customary, the Scheme Administrator may consider one or more of the following factors, without limitation: the level of skill, extent of training, and experience required to perform the procedure or service; the length of time required to perform the procedure or service as compared to the length of time required to perform other similar services; the severity or nature of the Illness or Injury being treated; the amount charged for the same or comparable services, medicines or supplies in the locality; the amount charged for the same or comparable services, medicines or supplies in other parts of the country; the cost to the provider of providing the service, medicine or supply; and such other factors as the Scheme Administrator, in the reasonable exercise of its discretion, determines are appropriate.

EXHIBIT A

ATTACHING TO AND FORMING PART OF EVIDENCE OF INSURANCE NO. **ARS-03-0025429**
EFFECTIVE DATE: 03/21/2016

It is hereby declared and agreed that with effect from the Effective Date indicated above, the attached **APPLICATION** is hereby made a part of this Evidence of Insurance.

**THE MERIDIAN SERIES APPLICATION**

  



## THE MERIDIAN SERIES APPLICATION

**The Meridian Series Insurance Plan™ is a surplus lines product underwritten by Certain Underwriters at Lloyd's of London. It is distributed, managed and administered, as agent for and on behalf of Underwriters, by Azimuth Risk Solutions, LLCsm (Azimuth).**

### Important Information

The Meridian Series offers two options: worldwide coverage or worldwide coverage excluding the U.S. and Canada. Both options provide coverage 24 hours a day, 7 days a week allowing you to have the freedom to choose any doctor or hospital for treatment. Please note the risks and subjects of insurance under this plan are not intended or considered by Underwriters or Azimuth to be resident located, or to be performed in any particular State of the United States, and special eligibility requirements apply. Also, this insurance is not subject to certain portability, access, renewal or other requirements of the Health Insurance Portability and Accountability Act of 1996. Please read and review all of the eligibility requirements, coverage conditions, and preexisting condition exclusions carefully before purchasing coverage. Marketing Brochures and Evidence of Insurance containing complete terms of coverage are available upon request. Please contact Azimuth or your independent insurance agent/broker for additional details.

### How Do I Apply?

**It is easy, simply fax this completed application to 888-201-8851 or 317-423-9620 if paying by credit card.**

**If paying by check, we recomend first faxing the application to the number above then mailing the completed application and and payment to:**

**Azimuth Risk Solutions, LLC**
**1 North Pennsylvania Street, Ste 600**
**Indianapolis, IN 46204**
**USA**

### Directions for Completing the Application

Failure to provide legible and complete information may delay processing of your Application.

1. In Section 1, print or type your name and the names of all other family members applying for coverage as you want them to appear on your identification card(s). Also, the mail forwarding address provided on your application will be the address where all correspondence will mailed, such as fulfillment kit, renewal forms, and any claims information.

2. All Applications must be fully completed, signed and dated to be considered. If any questions are answered "YES" in Section 2, you must identify the family member(s) to whom the "Yes" answer applies, and include the name, address and telephone number of the attending physician(s), diagnosis, all treatment dates, type(s) of treatment, prognosis, and present course of treatment. (Please use the space provided in Section 3, entitled "Medical Information/Prior Insurance," to provide this information). Please attach additional pages as necessary

3. U.S. Citizens: If you or any family member applying for coverage is located in the U.S. on the date of this application, the effective date of this insurance, if issue day be the later of:

(i) The effective date requested on the application; or (ii) The date the insured person departs the U.S.; or (iii) The date the application is accepted by Azimuth and an Evidence of Insurance issued.

4. Non-U.S. Citizens: If you or any family member applying for coverage is located in the U.S. on the date of this application and do not plan to depart the U.S., an affidavit of eligibility must be completed. Your insurance agent/broker can assist you in this regard. A new affidavit of eligibility will be required at each renewal.

5. Annual premiums may be paid by check, money order, wire transfer, or by Visa, Master Card, American Express, and Discover credit cards. Azimuth will not accept checks, money orders or wire transfers for semi-annual, quarterly, or monthly payment modes. These alternative payment modes are only accepted with preauthorization to debit your credit card on the due date(s) of your future premium installment(s), and result in total payments of 110%, 112%, and 120%, respectively, of the annual premium. An optional $25 (US) or $35 (non-US) fee may be paid in addition to the premium to have your insurance documents express mailed to you after your application has been approved.

## SECTION 1

Please complete for all Family Members applying for coverage. Failure to provide all information requested will delay the application process.

☐ Meridian Series- Enhanced　　　　　　　☒ Meridian Series- Basic

| Coverage Area | Deductibles | Dental Rider | Sports Rider | Express Delivery $25.00 (US) $35.00 (All Others) |
|---|---|---|---|---|
| Including US/Canada | $ 250.00 | No | Yes | $ 35.00 |
| Excluding US/Canada | ------ | ------ | ------ | ------ |

Requested Effective Date:  03/10/2016　　　　　　　　　　　Departure Date:  03/10/2016

Please print your name and all family member(s) names as you would like it to appear on your identification card. Please ONLY include the names of those family members applying for coverage under the Beacon/Axis Series Group Insurance Trust (Anguilla).

| NAME Please print your name below | Sex | Height | Weight | Date of Birth mo/day/yr. | Country of Citizenship | Personal Identification Number (Passport, SS# or DL#) |
|---|---|---|---|---|---|---|
| A. Applicant( Trejo  Mario  Becerril  ) | male | 5 feet 8 inches | 195 pounds | 05/18/1980 | Mexico | 1234 |
| B. Spouse ( Cuevas  Anel  Perez  ) | female | 5 feet 4 inches | 120 pounds | 06/20/1977 | Mexico | 12345 |
| C. (Trejo  Mario  Axel  ) | male | 2 feet 3 inches | 50 pounds | 12/10/2013 | Mexico | 123456 |
| D. ( Perez  Alicia  Cuevas  ) | female | 5 feet 6 inches | 130 pounds | 11/13/2003 | Mexico | 1234567 |
| E. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |
| F. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |
| G. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |
| H. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |
| I. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |
| J. ( ------  ------  ------  ) | ------ | ------ | ------ | ------ | ------ | ------ |

### RESIDENCE ADDRESS

| | |
|---|---|
| STREET ADDRESS:  Calle Ignacio Zaragoza S-N Colinia Centro   ------ | CITY, STATE, POSTAL CODE:  San Jose Del Cabo   ------  23400 |
| COUNTRY:  Mexico | TELEPHONE:  011526241425911 | I would like to receive my insurance documents electronically (please check the box to receive your documents by email)No |

IS YOUR EXPECTED LENGTH OF RESIDENCE OUTSIDE THE U.S. AT LEAST 6 OF THE NEXT 12 MONTHS?　　　　Yes
(IF A NON-U.S. CITIZEN AND YOUR RESIDENCE ADDRESS IS THE U.S. AND YOU ANSWERED "NO" TO THE ABOVE QUESTION, OR THE RESIDENCE ADDRESS IS NOT COMPLETED, AN AFFIDAVIT OF ELIGIBILITY MUST BE COMPLETED).

### MAIL FORWARDING ADDRESS

| | |
|---|---|
| STREET ADDRESS:  Calle Ignacio Zaragoza S-N Colinia Centro | CITY:  San Jose Del Cabo |
| STATE, COUNTRY:  ------  Mexico | TELEPHONE:  011526241425911 |
| EMAIL:  anelcuevas@gmail.com | |

IF YOUR RESIDENCE ADDRESS OR YOUR MAIL FORWARDING ADDRESS IS IN FLORIDA, IS THE APPLICANT CURRENTLY LOCATED IN FLORIDA?
No

**THE ABOVE QUESTION IS FOR SURPLUS LINES TAX DETERMINATION AND DOES NOT AFFECT COVERAGE**

# SECTION 2

| Please answer all questions for the Applicant and for each Family Member applying for coverage. For any question answered Yes, please explain in Section 3 of this Application. | If Yes, show family member by using letters from Section 1 | |
|---|---|---|
| 1. Are you or any other applicant presently hospitalized, or scheduled for or in need of hospitalization or surgery? | No | ------ |
| 2. Are you or any other applicant pregnant or have an adoption pending? | No | ------ |
| 3. Are you or any other applicant currently disabled or unable to perform normal activities? | No | ------ |
| 4. Do you or any other applicant participate in professional sports? | No | ------ |
| 5. Have you or any other applicant ever had, been recommended to have, or are you currently on a waiting list for any type of organ transplant (other than corneal)? | No | ------ |
| 6. Have you or any other applicant ever tested positive for, been diagnosed with, or been treated for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), Lymphadenopathy Syndrome, Human Immunodeficiency Virus (HIV) or any other Immune System Disorder? | No | ------ |

If any individual answered YES to any of the above six questions, he or she does NOT qualify for this insurance. Please contact Azimuth Risk Solutions, LLC. For further assistance. Thank you for the opportunity to serve you.

| | | |
|---|---|---|
| 7. If a non-U.S. citizen, have you or any other applicant resided continuously inside the U.S. for the last (5) years? | No | ------ |
| 8. Have you or any other applicant been diagnosed with or treated for any type of cancer or pre-cancerous condition during the past (5) years? If yes, please explain in section 3 of this application. | No | ------ |
| 9. Have you or any other applicant ever been diagnosed with or treated for diabetes, hyperglycemia, hypoglycemia, or sugar in the blood or urine? If yes, please explain in section 3 of this application. You may be required to complete a diabetes questionnaire. | No | ------ |

**If any individual answered YES to any of the above three questions, he or she may not qualify for this insurance.**

For questions 10-30, below must be answered for the applicant and each family member included on this Application for coverage. For any question answered "YES," please indentify the family member to whom the answer applies by using the corresponding letter from Section 1 of this Application, and provide complete details of the medical condition at issue in Section 3 of this Application, including name, address, and telephone number of attending physician(s), diagnosis, all treatment dates, type(s) of treatment, prognosis, and present course of treatment. Azimuth Risk Solutions, LLC. and Underwriters reserve the right to request additional medical information.

| | | |
|---|---|---|
| 10. During the last twelve (12) months, have you or any other applicant experienced manifestation or symptoms of, been diagnosed with, or received any consultation, examination, testing or treatment (including medications) for, any medical, health, mental, physical or nervous condition? | No | ------ |
| 11. During the last twelve (12) months, have you or any other applicant experienced a weight change of 20 pounds or more? | No | ------ |
| 12. During the last twenty-four (24) months, have you or any other applicant used tobacco of any form? If yes, please indicate type and frequency in section 3 of this application. | No | ------ |
| 13. During the last five (5) years, have you or any other applicant had any indication, diagnosis or treatment of an alcohol or drug dependency, problem or abuse or any drug or alcohol related arrest? | No | ------ |

Have you or any other applicant ever experienced manifestation or symptoms of, suffered from, sought consultation, examination, testing or been treated for, or been diagnosed with, any disease, condition, illness, medical problem, disorder, sickness or other problem arising from, involving, or relating to any of the following:

| | | |
|---|---|---|
| 14. Heart, cardiac, cardiovascular and/or circulatory, including, but not limited to: congestive heart failure, heart attack, angina, chest pain, arteriosclerosis, elevated blood pressure, hypertension, hypotension, swelling of feet/ankles, thrombosis, phlebitis, rheumatic fever, or heart murmur? | No | |
| 15. Blood, blood vessels, spleen, arteries, veins or disorders of the blood, including, but not limited to: anemia, hemophilia, leukemia, hepatitis, lymph glands, or high cholesterol? | No | |
| 16. Cancer, tumor, cyst, polyp, melanoma, Kaposi's sarcoma, cell disorder, shingles, lump, calcification, or growth of any kind? | No | ------ |
| 17. Congenital, genetic, hereditary or other birth condition or defect including, but not limited to: mental retardation, Down syndrome, or other chromosome disorder, physical disorder, deformity or defect? | No | ------ |
| 18. Neurological disorders, including but not limited to: multiple sclerosis (MS), muscular dystrophy, Lou Gehrig's disease (ALS), Parkinson's disease, paralysis, epilepsy, convulsions, seizures, migraines, chronic headaches, stroke, or transient cerebral ischemic attacks? | No | |
| 19. Muscular, skeletal, spine, bone, or joint, including but not limited to: scoliosis, disc disease or disorder, vertebrae, degeneration, or any other back or neck condition, rheumatism, arthritis, gout, tendonitis, osteoporosis or inflammation? | No | ------ |
| 20. Liver, Pancreas, Gall Bladder or endocrine disorders including, but not limited to: pituitary, thyroid, metabolic disorders, or obesity? | No | |
| 21. Respiratory system including, but not limited to: tuberculosis, lung disorders, emphysema, chronic cough, bronchitis, bronchial asthma, pleurisy pneumonia? | No | |
| 22. Mental and nervous system disorders including, but not limited to: psychosis, mental or behavioral disorders, chemical or drug abuse or dependency, alcoholism, psychiatric counseling and/or support groups, depression, anxiety, chronic fatigue, or eating or sleeping disorders? | No | |
| 23. Kidney, urinary tract functions, kidney or bladder stones or infections? | No | ------ |
| 24. Reproductive systems, including but not limited to: prostate or elevated PSA level, vaginal bleeding, fibroids, nodules or breast cysts, fallopian tubes, ovaries or uterus? | No | ------ |

## SECTION 2 (Continued)

| | | |
|---|---|---|
| 25. For female applicants, miscarriage, complicated pregnancy or delivery, or infertility consultation, advice, diagnosis or treatment? | No | ------ |
| 26. Sexually transmitted disease (STD)? | No | ------ |
| 27. Digestive system, stomach, or intestines, including but not limited to: esophageal, regurgitation, gastritis, ulcers, colon, or rectum disorder? | No | ------ |
| 28. Eyes, ears, nose, mouth, throat or jaw, including, but not limited to: cataracts, glaucoma, nasal septum deviation, chronic sinusitis, or TMJ? | No | ------ |
| 29. Any other disease, medical problem, illness, injury or condition of any kind not listed above? | No | ------ |
| 30. Have you or any other applicant been covered under any other health or medical insurance plan during the last twelve (12) months? If yes, please state the name and location of the insurance company, the policy number or plan number, and the dates of coverage below: | No | ------ |

| Co. Name & Location:: | Policy/Plan # : | Date(s) of Cover: |
|---|---|---|

# SECTION 3

Medical Information

For any question answered "YES" in Section 2, please identify each Family Member for whom the answer applies (using the corresponding letter(s) from Section 1),and provide complete details of the medical condition at issue, including the name, address and telephone number of the attending physician(s), hospital(s), clinic(s) and all other health care providers involved, diagnosis, all treatment dates, type(s) of treatment, prognosis, and present course of treatment. **Please attach additional pages as necessary.** Azimuth reserves the right to request additional medical information prior to acceptance of this Application.

| Family Member (use letters from Section 1) | Condition(s)/Diagnosis, Prognosis, Past and Present Course of Treatment(s) | Physician/Hospital/Clinic/Health Care Provider Name(s), Address & Telephone Number | Date(s) of Treatment/Service |
|---|---|---|---|
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |
| ------ | ------ | | ------ |

**MEDICAL RELEASE:** I (we) hereby authorize any doctor, practitioner of the healing arts, hospital, clinic, health related facility, pharmacy, government agency, insurance agency, insurance company, group policyholder, employee or benefit plan administrator having information as to my (our) care, advice, treatment, diagnosis or prognosis for any physical or mental condition, or financial and employment status, to provide such information to Azimuth Risk Solutions, LLC, and/or Underwriters and my agent/broker involved in procurement of this application.

**ACKNOWLEDGEMENT:** I (we) understand and agree that: (i) the insurance agent, broker, website, or other producer, if any, involved with respect to the solicitation of this Application is acting solely as my legal agent or representative and is representing my (our) personal interest, and that such person has no authority to bind or speak for, and is not acting as the legal agent or representative of Azimuth or Underwriters, (ii) marketing brochures and Evidence(s) of Insurance wordings are available to us prior to application upon request, (iii) any injury, illness, sickness, disease, or other physical, medical, mental or nervous condition, disorder or ailment that, with reasonable medical certainty, existed at the time of application or at any time during the three (3) years prior to the effective date of coverage and time of this insurance, including any subsequent, chronic or recurring complications or consequences related thereto or arising there from, whether or not previously manifested or symptomatic, diagnosed, treated, or disclosed prior to the effective date herein (a "pre-existing condition"), and that all charges and/or claims for pre-existing conditions will be excluded from coverage under this insurance for a period(s) up to twelve (12), twenty-four (24), or the duration of this insurance, and thereafter, certain benefits and/or all benefits will be reduced as stated in the Evidence of Insurance (available upon request prior to application), and/or the Schedule of Benefits as shown on the brochure and application, (iv) the subjects of insurance applied for are not intended or considered by the applicant(s), Azimuth or Underwriters to be resident, located, or to be performed in any particular state of the United States, and (v) Underwriters, as carrier and Underwriters of the plan, is solely liable for the coverage/s and benefits to be provided under this insurance, Azimuth acts solely as a agent/representative for Underwriters and has no independent liability under the Master Policy or any Evidence(s) of Insurance issued by the Master Policy.

**CERTIFICATION:** I (we) hereby certify, represent and warrant to Azimuth and Underwriters that: (i) I (we) have read the questions contained in this Application or that the questions have been read to me (us), and I (we) understand them, (ii) my (our) responses to the questions are true, accurate and complete in all respects as of the date hereof, and that I (we) will supplement such responses prior to the requested effective date in the event of any change or addition thereto, (iii) I am (we are) currently in good health and, except for the conditions and other information disclosed herein, I (we) have not been diagnosed with, sought consultation or been treated for, and have not experienced manifestation or symptoms of and do not suffer from any pre-existing which I (we) foresee may require treatment in the future or for which I (we) intend to claim under this insurance, and (iv) if this Application signed as guardian or proxy of the applicant, the signer warrants their authority and capacity to so act and to bind the applicant. By acceptance of coverage and/or submission of any claim for benefits, the applicant ratifies the authority of the signer to so act and bind the applicant.

**SATISFACTION GUARANTY/REVIEW PERIOD:** It is understood I (we) will have 7 days from the effective date to review the Evidence of Insurance and all benefits, terms, conditions, limitations and exclusions of coverage. If not completely satisfied, I (we) may cancel this insurance by written request retroactive to the effective date and receive a full refund of premium.

**SUBSCRIPTION:** I (we) hereby apply for membership in the Beacon/ Axis Series Group Insurance Trust (Anguilla), and for the insurance provided to Participating Member(s) by certain Underwriters at Lloyd's. I (we) understand and agree that (i) no coverage will be effective until this Application has been duly accepted in writing by Azimuth Risk Solutions, LLC. (Azimuth), (ii) no modifications or waiver relating to this Application or the coverage applied for will be binding upon Azimuth or Underwriters unless approved in writing by an officer of Azimuth or Underwriters, (iii) Azimuth and Underwriters rely on the accuracy and completeness of the information provided herein, (iv) any misrepresentation or omission contained herein will void this insurance, and any and all claims and benefits there under will be forfeited and waived, (v) by submission of this Application and/or any future claim for benefits I (we) purposefully initiate and take advantage of the privilege of conducting business with Azimuth Risk Solutions, LLC, a Indiana based company, and registered agent/representative of Certain Underwriters at Lloyd's, London, and invoke the benefits and protections of its laws, and (vi) the contract of insurance represented by the Master Policy and evidenced by the Evidence of Insurance shall be deemed issued and made in Indianapolis, Indiana, I (we) understand that Certain Underwriters at Lloyd's, as underwriter of the plan, is solely liable for the coverage and benefits provided under this insurance. I (we) understand that Lloyd's operates as an approved, non-admitted insurer in all states of the United States except Illinois and Kentucky where they are admitted. As such, claims under this insurance may not be made against any state guaranty fund. I understand and agree that the insurance agent/broker, if any, assisting with this Application is a representative of the Applicant. If signed by a representative of the Applicant, the undersigned warrants his/her capacity to so act. If signed as guardian or proxy of the Applicant, the undersigned warrants his/her capacity to so act. By acceptance of coverage and/or submission of any claim for benefits, the Applicant ratifies the authority of the signer to so act and bind the Applicant.

------
Signature of Applicant, Guardian or Proxy                                                                 Date (Mo./Day/Yr.)

------
Signature of Spouse                                                                                                        Date (Mo./Day/Yr.)

# SECTION 5.

**Cheque**

All payments must be made in U.S. dollars. Please make checks and money orders payable to Azimuth Risk Solutions, LLC. (Azimuth). If paying by credit card, I (we) authorize Azimuth to debit my Visa card, MasterCard, American Express card, or Discover card account for the total amount due. If I have selected monthly, quarterly, or semi-annual payment modes, I (we) hereby request and authorize Azimuth to debit my credit card account for the proper installment payment due on the date set forth by Azimuth. This authorization will remain in effect for up to 12 months or as long as I (we) continue to renew my (our) coverage, or until coverage is revoked in writing. Coverage purchased by credit card is subject to validation and acceptance by the credit card company. I understand that coverage will not be effective if the credit card company denies the charge. Note: On American Express cards, the CSC is a 4 digit number printed on the front above the account number. On all other cards, it is a 3 digit value printed on the signature panel on the back of the card immediately following the account number, or a portion of the account number.

| Name as it appears on card: —— | Billing Address: Calle Ignacio Zaragoza S-N Colinia Centro , San Jose Del Cabo , United States, 23400 |
| Credit Card Number: —— | Expiration Date: —— Card Security Code (CSC): —— |
| Daytime Phone Number: 011526241425911 | Authorized Signature: ——— |

I (we) hereby apply for membership in the Beacon/Axis Series Group Insurance Trust (Anguilla) and for the insurance provided to Participating Members by Lloyd's, London. I (we) have personally completed this Application. I (we) represent and warrant that the answers and statements on this Application are true, complete and correctly recorded. I (we) understand Azimuth Risk Solutions, LLC. relies on the information provided on this Application, including any attachments, to determine whether or not the Applicant(s) meets the Underwriting and Eligibility requirements of the plan. I (we) understand that any misrepresentation or omission contained herein will void my (our) insurance and all claims will be forfeited. I understand that this insurance contains Preexisting condition exclusions, Pre-certification penalties, and other restrictions, exclusions and limitations set forth in the Policy. I understand that I may request a complete copy of the Master Policy at any time and that Azimuth Risk Solution agrees to provide it to me. I understand that if this Application is not accepted, the sole obligation of Azimuth Risk Solutions is to return to me any premium(s) paid. I (we) understand that Certain Underwriters at Lloyd's, London as underwriter of the plan, is solely liable for the coverage and benefits provided under this insurance. I (we) understand that Lloyd's operates as an approved, non-admitted insurer in all states of the United States except Illinois and Kentucky, where they are admitted. As such, claims under this insurance may not be made against any state guaranty fund. I (we) understand that the insurance Agent or Broker, if any, assisting me (us) with this Application is a representative of me (us) the Applicant. The undersigned authorizes any doctor, medical practitioner, hospital, clinic, health facility, pharmacy, government agency, insurance agency, insurance company, group policyholder, or insurance or benefit administrator or any other entity having information as to the care, advice, treatment, diagnosis, or physical or mental condition of any Family Member listed on this Application to release said information to Azimuth Risk Solutions, LLC.

——

Signature of Applicant, Guardian or Proxy                                        Date (Mo./Day/Yr.)

——

Signature of Spouse                                        Date (Mo./Day/Yr.)

# SECTION 6.

**Insurance Agent/Broker Use Only**

| Azimuth Agent Number: 51074ed9 | Azimuth Agent Name: ExpatGlobalMedical.com (ExpatGlobalMedical.com) |
| Company Name: ExpatGlobalMedical.com | |
| Company Address: 106 Keswick Drive,First Floor | City, State, Postal Code: Advance  North Carolina,  27006 |
| Phone: 336-998-9583 | Fax: | Country: United States |
| Website: http://www.expatglobalmedical.com/ | Email: john@expatglobalmedical.com |
| Agent/Broker Signature: | |

# SECTION 4.

**Premium Calculation (Please note, Applications without payment of premium will not be approved)**

Annual premiums may be paid by check, money order, wire-transfer, or by Visa, MasterCard, American Express, and Discover card. Azimuth will not accept checks, money orders, or wire transfer for semi-annual, quarterly, or monthly payment modes. These alternative payment modes are only accepted with pre-authorization to debit your credit card on the due date (s) of your future premium installment(s) prior to the expiration date. Additional fee(s) may be charged to your credit card if authorized for express delivery of your insurance documents upon request; such fee(s) would be in addition to insurance premium.

| | (1) MEDICAL PREMIUM | (2) OPTIONAL DENTAL RIDER | (3) OPTIONAL SPORTS RIDER | (4) TOTAL |
|---|---|---|---|---|
| A. Applicant | $ 922 | $ 0 | $ 0 | $ 1106.4 |
| B. Spouse | $ 1466 | $ 0 | $ 0 | $ 1466 |
| C. | $ 0 | $ 0 | $ 250 | $ 250 |
| D. | $ 308 | $ 0 | $ 250 | $ 558 |
| E. | $ ------ | $ ------ | $ ------ | $ ------ |
| F. | $ ------ | $ ------ | $ ------ | $ ------ |
| G. | $ ------ | $ ------ | $ ------ | $ ------ |
| H. | $ ------ | $ ------ | $ ------ | $ ------ |
| I. | $ ------ | $ ------ | $ ------ | $ ------ |
| J. | $ ------ | $ ------ | $ ------ | $ ------ |

OPTIONAL MATERNITY RIDER (APPLIES ONLY TO MERIDIAN BASIC PLAN OPTION). PLEASE CHECK HERE IF PURCHASING THE MATERNITY RIDER ☐                     $ 2,200.00 (IF APPLICABLE)

Please add all totals listed in column number 4 and list total here        $        3380.4 + 0.00 (StateTax)
                                                                                                       (Subtotal A)

**First Payment Total Due**

Modal factors:   Annual=1.00

**(Please select a payment mode)**

$  3380.4 + 0.00          X  1.00                    = $  3,380.40 + Optional express mailing fee ($25 in US, $35 outside US): $  35
(StateTax)                   *Modal Factor              Total
(Subtotal A)

**Total First Payment Due: $  3415.4**

**Future Installment Payment s Due (For semi-annual, quarterly or monthly payment modes)**

Modal factors:   ------

**(Please select a payment mode)**

$  ------                     X  ------                  = $  ------
(Subtotal A)                *Modal Factor            Total Premium due for all remaining payments

Please provide a valid email address in Section 1. All future correspondence regarding monthly, quarterly and semi-annual payments will be made via email to the address provided above in Section 1. If you elect the monthly payment mode, we will draw your first two months during your initial payment, leaving 10 additional monthly payments. During your last month of coverage there will be no payment due.

  

1 North Pennsylvania Street, Ste 600      Phone: 317-644-6291/888-201-8850      Email: service@azimuthrisk.com
Indianapolis, Indiana 46204              Fax: 317-423-9620/888-201-8851         Website: www.azimuthrisk.com

CEA 809



03/21/2016

RECEIPT OF PAYMENT ............

TO: Mario Becerril Trejo

REGARDING: PAYMENT OF INSURANCE PREMIUM "THE MERIDIAN SERIES "

CERTIFICATE NUMBER: ARS-03-0025429

THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF PAYMENT IN THE SUM OF $ 3,415.40 TO AZIMUTH RISK SOLUTIONS, LLC.

PAYMENT RECEIVED BY Check : Wire

## THANK YOU FOR CHOOSING AZIMUTH RISK SOLUTIONS, LLC FOR YOUR INTERNATIONAL MEDICAL INSURANCE NEEDS.



## Cancellation Instructions

- Written request in writing; email and fax are acceptable requests.
  service@azimuthrisk.com
  317-423-9620 or 888-201-8851
- Requests must be received prior to the requested cancellation date.
- $25.00 cancellation fee.
- If there are pending eligible claims, refund will not be issued.
- Cancellation is based on short rate table below.

| Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Per cent of one year Premium | Days Insurance in Force | Per cent of one year Premium | Days Insurance in Force | Per cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year:
  1.  Determine full annual premium as for insurance written for a term of one year.
  2.  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
  3.  Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force



# PRE-CERTIFICATION PROVISIONS & REQUIREMENTS

Pre-certification is a general determination of Medical Eligibility, only, and all such determinations are made by Azimuth (acting through its authorized agents and representatives) in reliance and based upon the completeness and accuracy of the information provided by the Participating Member and/or his/her relatives, guardians and/or healthcare providers at the time of Pre-certification. Azimuth reserves the right to challenge, dispute and/or revoke a prior determination of Medical Necessity based upon subsequent information obtained. Pre-certification is **not** an assurance, authorization, or verification of coverage, a verification of benefits, or a guarantee of payment. The fact that Treatment or supplies are Pre-certified by Azimuth does not guarantee the payment of benefits or the amount or eligibility of benefits. Azimuth's consideration and determination of a Pre-certification request, as well as any subsequent review or adjudication of all medical claims submitted in connection therewith, shall remain subject to all Terms and Conditions of this Master Policy, including exclusions for Pre-existing Conditions and other designated exclusions, benefit limitations, and the requirement that claims be Usual, Reasonable and Customary. Also, any consideration or determination of a Pre-certification request shall not be deemed or considered as Azimuth's approval, authorization or ratification of, recommendation for, or consent to any diagnosis or proposed course of Treatment. Neither Azimuth (nor anyone acting on their behalf) has any authority or obligation to select Physicians, Hospitals, or other healthcare providers for the Participating Member, or to make any diagnosis or medical Treatment decisions on behalf of the Participating Member, and all such decisions must be made solely and exclusively by the Participating Member and/or his/her family members or guardians, treating Physicians and other healthcare providers. If the Participating Member and his/her healthcare providers comply with the Pre-certification requirements of this Master Policy, and the Treatment or supplies are Pre-certified as Medically Necessary, Azimuth will reimburse the Participating Member for Eligible Medical Expenses incurred in relation thereto, subject to all Terms of this insurance, including the Deductible and Coinsurance. Eligibility for and payment of benefits are subject to all of the Terms of this insurance.

## SPECIFIC REQUIREMENTS:

The following Treatment and/or supplies must always be Pre-certified for Medical Necessity by Azimuth:

1. Inpatient Treatment of any kind; and
2. any Surgery or Surgical procedure; and
3. care in an Extended Care Facility; and
4. Home Nursing Care generally; and
5. Durable Medical Equipment; and
6. artificial limbs; and
7. all Covered Transplant Treatment.
8. Diagnostic testing such as MRI, CT Scan, PET Scan, and Ultrasounds

## GENERAL REQUIREMENTS:

To comply with the Pre-certification requirements of this insurance for the Treatment and services listed in Section above, the Participating Member or his/her Physician must:

1. Contact Azimuth at the telephone numbers printed on the ID card, as follows:

    Inside the United States:          1-888-201-8850

    Outside the United States:          1-317-644-6291 (Collect if necessary)

    E-mail:    service@azimuthrisk.com

    Website:  www.azimuthrisk.com                    **and**

2. As soon as possible before the Treatment is to be obtained; and
3. For transplant Pre-certification, contact Azimuth as soon as possible but always within seventy-two (72) hours of becoming a candidate for a Covered Transplant; and
4. Comply with the instructions of Azimuth and submit any information or documents required by Azimuth; and
5. Notify all Physicians, Hospitals and other healthcare providers that this insurance contains Pre certification requirements and ask them to fully cooperate with Azimuth.

1



# Claim Form

Please complete Parts 1,2,3,4, and 5, if applicable.
Mail all claim forms and **all original itemized bills** for services and supplies to:

**Azimuth Risk Solutions, LLC**          **Website: www.azimuthrisk.com**
**Attn: Claims Dept.**                        **E-mail: service@azimuthrisk.com**
**P.O. Box 627**                              **Phone: 317-644-6291/888-201-8850**
**Indianapolis, IN 46206**                    **Fax:     317-423-9620/888-201-8851**

For any additional questions or concerns please contact us via e-mail, fax, or phone.

| **Part 1** Please complete claim form below.  All communications of this claim will be sent to the address below. |
|---|
| Is this claim related to (please check one):  ❑**Accident Related Injury**     ❑ **Dental Accident**     ❑ **Illness/Injury** |

| Claimant/Patient Name: | | Policy holder's Name: | | |
|---|---|---|---|---|
| Date of Birth: M/D/Y | ❑Male ❑Female | Date of Birth: M/D/Y | | ❑Male ❑Female |
| Complete Mailing Address for all correspondence: | | City, State: | Country: | Postal Code: |
| Email: | Telephone: | | Work Telephone: | |
| Destination Country(ies): | | | | |
| Identification Number: | Citizenship of Claimant: | | Home Country: | |
| Full-Time Student: ❑Yes ❑No | | | | |
| If yes, please provide the name and address of the school: | | | | |
| Is this a continuing claim?  Please check here: ❑Yes ❑No If yes, please provide original dates of the initial claim form sent: | | | | |

| **Part 2** If covered by another insurance plan please complete below. | |
|---|---|
| **Do you have additional Insurance?** ❑Yes ❑No | |
| Name of Primary Insured of other insurance company: | Date of Birth: M/D/Y |
| Please provide name of other insurance company: | |
| Mailing address of other insurance company: | |
| Policy Number of other insurance plan: | Group Number of other insurance plan: |

2

**Part 3** Please fill out all applicable questions below, more information may be requested.
(If you need additional space, please attach a separate sheet.)

1. **How did this condition/illness begin?**
   **Please describe all symptoms.**

2. **When did the first symptom of the illness/condition begin? (M/D/Y)**

3. **Have you ever been treated for this illness/condition before? ❑Yes ❑No**

4. **List all the names and addresses of the providers you have seen for this illness/condition:**

5. **Is this illness/condition the result of an accident?  ❑Yes ❑No**

6. **Is this illness/condition related to a work accident?    ❑Yes ❑No**
   **If yes, have you applied for workers compensation?    ❑Yes ❑No**

7. **Did this illness/condition involve a motor vehicle?      ❑Yes ❑No**
   **If yes, please provide names of all parties involved, including insurance carriers and policy numbers including the dates of accident:**

8. **Was a police report filed? ❑Yes ❑No**
   **If yes, Name and Number of Police Department, and number of report:**

3

**Part 4** Please complete only if treatments occurred outside of the US.

| Country which treatment occurred in? | Condition(s)/Diagnosis | Physician/Hospital/Clinic/Health Care Provider Name(s), Address & Telephone | Date(s) of Treatment | Total Charge paid/billed? | Type of currency paid/billed? |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part 5** Authorization, please complete for all claims.

I verify all information contained in this form is true, correct and complete to the best of my knowledge.

> The undersigned authorizes any doctor, medical practitioner, hospital, clinic, health facility, pharmacy, government agency, insurance agency, insurance company, group policyholder, or insurance or benefit administrator or any other entity having information as to the care, advice, treatment, diagnosis, or physical or mental condition of any family member listed on this Application to release said information to Azimuth Risk Solutions, LLC.

Notice: Any false statement, concealment or fraud shall render this insurance null and void and claims hereunder shall be forfeited.

Authorization: I authorize payment of medical benefits to the doctor or other supplier of services submitting the **attached bills**.

**Print Name of Primary Insured**_____**Date (Mo./Day/Yr.)**

**Signature of Insured,
Or Guardian**_____**Date (Mo./Day/Yr.)**

4