NOT FOR PUBLICATION

RECEIVED
APR 10 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MED-X GLOBAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AZIMUTH RISK SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Civ. No. 17-13086<br><br>**OPINION** |

<u>THOMPSON, U.S.D.J.</u>

This matter comes before the Court upon the motion to dismiss by Defendants Azimuth Risk Solutions, LLC and Certain Underwriters at Lloyd's, London Subscribing to Policy Number 92355005[1] (collectively, "Defendants"). (ECF No. 12.) Plaintiff Med-X Global, LLC ("Plaintiff") opposes. (ECF No. 19.) The Court has decided this Motion based on the written submissions of the parties without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Motion is granted without prejudice to Plaintiff's right to timely amend.

## **BACKGROUND**

This case is a contract action arising out of a health insurance policy. On March 21, 2016, Mario Trejo took an insurance policy with Lloyd's of London through Azimuth Risk Solutions, a third party administrator of Lloyd's. (Compl. ¶¶ 2, 10, ECF No. 1.) This policy

---

[1] Defendants correct the name of this Defendant from Plaintiff's papers and describe its name, in its entirety, to read: "Certain Underwriters at Lloyd's, London Subscribing to Policy Number 92355005, each for their own, and not for the other, their interests being several and not joint." (Defs.' Mot. Dismiss at 1, ECF No. 12-2.)

1

covered all eligible medical expenses for himself and his dependents. (*See id.* ¶¶ 11–17.) Mr. Trejo, a citizen of Mexico, suffered a gunshot wound and was hospitalized at St. Luke's Medical Center ("St. Luke's") in Mexico from July 2, 2016 through August 22, 2016. (*Id.* ¶¶ 3, 20.) Mr. Trejo allegedly assigned his rights to benefits to St. Luke's. (*Id.* ¶ 22.) St. Luke's provided $917,116.32 worth of services to Mr. Trejo, and Lloyd's denied coverage for all but $62,500—representing that the stay was not medically necessary and they were not usual, reasonable, and customary charges. (*Id.* ¶¶ 23, 25.) St. Luke's allegedly assigned its benefits to Plaintiff, a billing agent for foreign insurance providers, for assistance in pursuing the benefits of Mr. Trejo's claim. (*Id.* ¶¶ 4, 27–28.)

Plaintiff reached out to Defendant Azimuth Risk Solutions regarding the claim, and a representative indicated that they had retained a Mexican medical provider to assess the reasonableness of the claims and charges and prepare a claim report. (*Id.* ¶ 31.) Receiving no response, Plaintiff retained the Merlin Law Group, which requested a full administrative record and claim report, as well as twenty-three other enumerated items. (*Id.* ¶ 32.) Plaintiff again received no response. (*Id.* ¶¶ 33–35.) On December 14, 2017, Plaintiff filed the present law suit, pleading two Counts of breach of contract. (*See generally* Compl.) On February 12, 2018, Defendants filed the present Motion to Dismiss. (ECF No. 12.) Plaintiff opposed, and Defendants replied. (ECF Nos. 19, 20.) This Motion is presently before the Court.[2]

---

[2] Although not raised by the parties, venue is proper before this Court pursuant to the policy. (*See* Evidence of Ins. ¶ 20, Ex. A, ECF No. 1; Master Policy ¶ 9, Ex. 1, ECF No. 12-4.) Moreover, this Opinion applies New Jersey law, as both parties have done without contest. Although the application Plaintiff attached to its Complaint includes a provision entitled "Subscription" purporting to employ Indiana law (The Meridian Series Application, Section 3, Ex. A, ECF No. 1-1), the policy itself contains no relevant choice of law provision.

2

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 2016 WL 106159 (3d Cir. Jan. 11, 2016). The court, however, may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Defendants argue that this case should be dismissed as a matter of law, for an improper assignment effectively divesting Plaintiff of standing, and/or the failure to properly plead assignment. Mr. Trejo's policy includes express anti-assignment clauses. According to the "Evidence of Insurance" policy document that Plaintiff attached to its Complaint,

> [n]o transfer or assignment of any of the Participating Member's rights, benefits or interests under this insurance shall be valid, binding on, or enforceable against

3

the Scheme Administrator unless first expressly agreed and consented to in writing by the Scheme Administrator. Any such purported transfer or assignment not in compliance with the foregoing Terms shall be void and without effect as against the Scheme Administrator, and the Scheme Administrator shall have no liability of any kind under this insurance to any such purported transferee or assignee with respect thereto.

(Evidence of Ins. ¶ 12.) Defendants attached a copy of the Master Policy to their moving papers, which prohibits assignment in two instances. One provision, entitled "Assign, Change of Waiver," has the same anti-assignment language cited above. (Master Policy ¶ 8.) The other provision, entitled "Claims Settlement," provides,

No provider or other third party shall have any direct or indirect claim or right of action against the scheme administrator under the Master Policy of any Evidence(s) of Insurance issued by the Master Policy, whether by purported assignment of Benefits, subrogation of interests or otherwise, unless first expressly agreement and consented to in writing by the Scheme Administrator . . . .

(*Id.* ¶ 7.2.) Defendants' Motion and Plaintiff's opposition raise a number of arguments with respect to these clauses and their enforceability. The Court will address each below.

## I. Was Assignment Valid?

Defendants argue that Plaintiff is precluded from bringing breach of contract claims as a matter of law because Mr. Trejo's policy prohibited assignment of the rights and benefits of the policy. (Defs.' Br. at 7–9, ECF No. 12-3.)[3] Plaintiff opposes on the grounds that anti-assignment provisions are unenforceable under New Jersey statutes and void as applied to post-loss claims. (Pl.'s Opp'n at 3–6, ECF No. 19.)

Anti-assignment provisions are generally enforceable under contract law, derived from a contracting party's freedom to place restraints on alienation. *See Givaudan Fragrances Corp. v.*

---

[3] A Rule 12(b)(6) motion to dismiss is an appropriate vehicle by which to advance this argument. *See, e.g., Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 262 F. Supp. 3d 105, 110–11 (D.N.J. 2017), *appeal docketed*, No. 17-2388 (3d Cir. June 29, 2017); *Kaul v. Horizon Blue Cross Blue Shield*, 2016 WL 4071953, at *2, *3 (D.N.J. July 29, 2016).

4

*Aetna Cas. & Sur. Co.*, 151 A.3d 576, 586–87 (N.J. 2017). The New Jersey Appellate Division has found health insurance anti-assignment clauses "valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers." *Somerset Orthopedics Assocs., P.A. v. Horizon Blue Cross Blue Shield of N.J.*, 785 A.2d 457, 465 (N.J. Super. Ct. App. Div. 2001); *see id.* at 460–61 (collecting state court cases that have "upheld almost uniformly" anti-assignment provisions in healthcare policies); *see also Kaul*, 2016 WL 4071953, at *2 ("[T]he New Jersey Superior Court, Appellate Division, has repeatedly upheld the anti-assignment provisions in Defendants' insurance plans." (citing *Somerset Orthopedics Assocs.*, 785 A.2d at 465; *Prospect Med., P.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2011 WL 3629180, at *4 (N.J. Super. Ct. App. Div. Aug. 19, 2011))).[4]

This policy in favor of anti-assignment provisions is not undermined by N.J.S.A. 26:2S-6.1, as Plaintiff claims (Pl.'s Opp'n at 5). The statute provides,

> With respect to a carrier which offers a managed care plan that provides for both in-network and out-of-network benefits, in the event that the covered person assigns, through an assignment of benefits, his right to receive reimbursement for medically necessary health care services to an out-of-network health care provider, the carrier shall remit payment for the reimbursement directly to the health care provider in the form of a check payable to the health care provider, or in the alternative, to the health care provider and the covered person as joint payees . . . .

N.J.S.A. 26:2S-1.6(c). While one New Jersey state court has contemplated that this statute could *plausibly* be interpreted as a prohibition on anti-assignment provisions in health care policies, *see*

---

[4] In support of their argument that this rule extends to health insurance policies, Defendants rely on some cases involving ERISA-based insurance plans. (*See* Defs.' Br. at 7.) These cases may be distinguishable from a state law-governed policy like this matter. Previous opinions from this District have noted this distinction, in part due to the operation of preemption doctrine. *See Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 604 (D.N.J. 2011) (noting that analysis of assignment and standing may be different between ERISA- and state law-governed plans); *see also In re LymeCare, Inc.*, 301 B.R. 662, 682 n.16 (Bankr. D.N.J. 2003).

*N.J. Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J.*, 2011 WL 6341178, at *2 (N.J. Super. Ct. App. Div. Dec. 20, 2011) ("To be sure, plaintiff's argument is plausible. A fair reading of N.J.S.A. 26:2S-6.1(c) suggests that anti-assignment clauses in medical plans may not be enforced as a general matter."), courts in this District have more recently rejected that interpretation, *see Advanced Orthopedics & Sports v. Blue Cross Blue Shield of Mass.*, 2015 WL 4430488, at *5 (D.N.J. July 20, 2015) ("On its face, this statute merely regulates the method of payment when an assignment of benefits occurs. It does not address the question of whether an anti-assignment clause is enforceable."). Based on the statutory language, the Court is likewise not persuaded it has any preclusive effect.

Plaintiff responds, as Defendants anticipated, that the anti-assignment provision is invalid with respect to this type of post-loss claim. (*See* Pl.'s Opp'n at 3–4; Defs.' Br. at 8 ("In response, Med-X may argue that the express anti-assignment clause is inapplicable to this matter because it involves a post-loss claim, as opposed to a pre-loss policy.").) Plaintiff relies on a recent New Jersey Supreme Court decision, *Givaudan Fragrances Corp. v. Aetna Casualty & Surety Co.*, which embraced the majority position among the states that the assignment of a post-loss claim is an exception to an enforceable anti-assignment provision. *See* 151 A.3d at 590–91. The *Givaudan* court distinguished pre- and post-loss claim assignment, reasoning that assignment post-loss does not affect the insurer—it is simply the transfer of a claim to money. *Id.* at 591. *Givaudan* involved a general insurance liability contract that covered environmental contamination at a manufacturing site. *Id.* at 579. Subsequently, few courts have addressed the effect of this precedent. Some courts have declined to apply *Givaudan*, distinguishing cases involving ERISA where federal, not NJ state law, governs. *See Shah v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 4284470, at *2 (D.N.J. Sept. 27, 2017); *Shah v. Blue Cross Blue Shield*

*of Ala.*, 2017 WL 4182043, at *3 (D.N.J. Sept. 21, 2017). Others have distinguished both on the basis of ERISA versus state law and health insurance versus general insurance policies. *See, e.g., Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, 2017 WL 4179813, at *4 (D.N.J. Sept. 21, 2017) ("Plaintiff's reliance on *Givaudan*, is misplaced, however, as *Givaudan* concerns corporate successors-in-interest to a contaminated manufacturing site and has nothing to do with ERISA-governed health plans or health insurance generally."); *IGEA Brain & Spine P.A. v. Blue Cross Blue Shield of Minn.*, 2017 WL 1968387, at *2 n.3 (noting the ERISA distinction and that "none of the cases [p]laintiff relies upon concern the assignment of benefits of a healthcare plan to the patient's medical provider, but rather post-loss claims under general liability or property insurance policies").

Without a clear answer regarding the applicability of this majority rule to health insurance policies, the Court instead looks to underlying policy goals. The *Givaudan* court emphasized that anti-assignment provisions are enforceable pre-loss to avoid increasing the potential liability of the insurer or causing it to insure a different risk, but post-loss is different because the liability was already incurred and unchanged at the time the claim arose. *See* 151 A.2d at 585–86, 91. Conversely, in *Somerset Orthopedics Associates*, the New Jersey Appellate Division found that most courts enforce anti-assignment clauses in health insurance policies because they "advance the overarching public interest in limiting health care costs for, if the patient could assign his or her rights to payment to outside medical providers, it would undercut the pre-arranged costs with in-network providers that are relied upon by non-profit health services corporations in deciding the premium amount." 785 A.2d at 461 (citing *Parrish v. Rocky Mountain Hosp. & Med. Servs. Co.*, 754 P.2d 1180, 1182 (Colo. App. 1988)). Accordingly, a number of courts conclude that anti- or non-assignment "clauses in group health

care contracts are enforceable against post-loss assignments to health care providers of the insured's right to receive benefits under the policy." *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1051 (Colo. 1994) (en banc) (collecting cases); *see Sec. First Ins. Co. v. State of Fla., Office of Reg.*, 177 So.3d 627, 629–30 (Fla. Dist. Ct. App. 2015) (noting post-loss assignment of rights is permissible in health insurance policies—to hold otherwise would hinder underlying goal of prohibiting insured from assigning outside of the network).

While it is not clear that enforcing the anti-assignment clause in this case, post-loss, advances the goals underlying the prohibition on assignment in the health care context, the Court is not inclined to disturb the trend most courts have adopted with respect to health insurance policies, nor disturb New Jersey's policy preference in favor of anti-assignment clauses in said policies. Therefore, the Court finds that the two assignments of Mr. Trejo's benefits violated his policy.

## II.     Whether or not Valid, was Assignment Waived?

Plaintiff argues in response that, even if the assignments were invalid, Defendants' conduct constituted a waiver. (Pl.'s Opp'n at 6–7.) "It has been held . . . that a party can waive an anti-assignment provision via a 'written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee.'" *Atl. Orthopaedic Assocs., LLC v. Blue Cross Blue Shield of Tex.*, 2016 WL 889562, at *4 (D.N.J. Mar. 7, 2016) (quoting *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J.*, 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007)). Such conduct includes "discussions of patient coverage under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes," *id.* (internal citations and quotations

omitted); *see also id.* (collecting District of New Jersey cases where waiver was satisfied through course of dealing), but excludes direct payment to the purported assignee if the plan permits direct payment to healthcare providers, *see Advanced Orthopedics & Sports*, 2015 WL 4430488, at *7. Although it need not be express, a waiver must be knowing, voluntary, and intentional, as demonstrated by the circumstances. *See Univ. Spine Ctr. v. Aetna Inc.*, 2018 WL 1409796, at *6 (D.N.J. Mar. 20, 2018) (quoting *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003); *Shebar v. Sanyo Bus. Sys. Corp.*, 544 A.2d 377, 384 (N.J. 1988)); *see also Univ. Spine Ctr.*, 262 F. Supp. 3d at 112. Therefore, the waiver analysis is fact-intensive and may warrant additional discovery. *Atl. Orthopaedic Assocs., LLC*, 2016 WL 889562, at *5.[5]

Plaintiff relies on the fact that part of the claim was paid out following assignment. (Compl. ¶ 25.) This fact is unavailing. (*See* Defs.' Reply at 7 (citing favorably *Advanced Orthopedics & Sports* with respect to direct payment and making no mention that the policy prohibits direct payment to service providers).) Plaintiff also pleads fractured correspondence with representatives of Azimuth Risk Solutions. (*See id.* ¶¶ 29–33.) Although with minimal response, Azimuth Risk Solutions did engage with Plaintiff regarding Mr. Trejo's claim. The Court, however, has no counter-narrative by Defendants or documentation other than the emails pasted into the Complaint. With these facts as presented, the Court cannot conclude that there

---

[5] Defendants cite *Middlesex Surgery Center v. Horizon*, 2013 WL 775536 (D.N.J. Feb. 28, 2013), to argue that engaging with a party through pre-suit claim review does not waive defective or invalid assignment. (*See* Defs.' Reply at 7, ECF No. 20.) Once again, however, this case is based on ERISA, for which the court found there was no case law supporting standing by waiver. *Id.* at *4. *But see Advanced Orthopedics & Sports*, 2015 WL 4430488, at *7 (citing *Middlesex Surgery Center* with support for a discussion of waiver under NJ law). The *Middlesex Surgery Center* court did note that even if waiver were permitted under ERISA, pre-suit claim discussions are distinct from whether someone has "a right to *sue* under § 502(a)." *Id.* (emphasis added). This issue deals with proper assignment and waiver of assignment. Assignment in and of itself is the vehicle to standing to sue, since there is no distinct statutory body which governs standing, as with ERISA.

was waiver through passive conduct. *Compare Advanced Orthopedics & Sports*, 2015 WL 4430488, at *78 ("All Plaintiff alleges is that Defendant made a payment for services rendered, and failed to provide the requested documents that it sought. This Court and other courts throughout the country have rejected the assertion that such conduct constitutes a waiver."), *with N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*, 2013 WL 5366400, at *7 (D.N.J. Sept. 25, 2013) (finding repeated, voluntary "interactions between Plaintiff and BCBS, and which include: making phone calls to BCBS; speaking with representatives of BCBS on the phone; and receiving letters explaining the denial of claim payments by BCBS" constituted waiver). In sum, Defendants did not waive the invalid assignments.

### III. Was Assignment Properly Pled?

Finally, in the alternative, Defendants argue that Plaintiff failed to properly plead an assignment of the policy from Mr. Trejo to St. Luke's. Specifically, they claim that Plaintiff uses conclusory allegations and labels, rather than facts, to establish that there was an assignment, and thus Plaintiff's breach of contract claims fail as a matter of law. (Defs.' Br. at 9–10; Defs.' Reply at 8.) Having found that the assignments in this case violated the policy's anti-assignment clauses and that Defendant did not waive the assignments through its conduct, the Court need not address whether the initial assignment was properly pled pursuant to Rule 12(b)(6).

### CONCLUSION

For the foregoing reasons, Defendants' Motion is granted. An appropriate Order will follow.

Date: 4/10/18

ANNE E. THOMPSON, U.S.D.J.

10